<hr />

UNITED STATES v. MULLIN.

In re GARRETT et al.

(District Court, D. Nebraska. October 21, 1895.)

1. INDIANS—DUTY OF GOVERNMENT—CITIZENSHIP.
The government is not relieved from its duties of guardianship and protection of the members of an Indian tribe, assumed by treaty with such tribe, in consequence of the Indians becoming citizens of the United States.

2. SAME—POWER OF EXECUTIVE DEPARTMENT.
The federal government, by the terms of the treaty of March 8, 1865, with the Winnebago Indians, and the statutes regarding the protection of Indian reservations from intrusion, is charged with the duty of protecting the Indians in the use and occupancy of the reservation lands, whether allotted in severalty or not; and the executive department, acting through the Indian agents on the reservation, has full power and authority to do whatever may be necessary for the proper performance of this duty.

3. WRITS—REV. ST. § 5398—ORDER OF INDIAN AGENT.
A written order of an Indian agent, acting in pursuance of instructions from the interior department, for the purpose of fulfilling the duty of the government to protect the Indians in the use and occupancy of their reservations, is a legal writ or process, within the meaning of Rev. St. § 5398, imposing a penalty for resisting the service of such writ or process.

4. OFFICERS OF UNITED STATES—REV. ST. § 5398—INDIAN POLICE.
A member of the Indian police is not an officer of the United States, within the meaning of the first clause of Rev. St. § 5398, imposing a penalty for resisting any officer of the United States in serving a writ or process, but such police are included among the other persons who may be authorized to serve writs or process, within the last clause of that section.

Indictment against John H. Mullin, under Rev. St. § 5398, for unlawfully resisting service of a legal writ, and application by William H. Garrett and John F. Meyers for a writ of habeas corpus. A motion to quash the indictment against Mullin, and the application of Garrett and Meyers, submitted on the petition, return, and evidence taken before the court, were heard together.

A. J. Sawyer, U. S. Dist. Atty., and R. W. Breckenridge, for the United States.

Brome, Burnett & Jones, for defendant and for the petitioners.

SHIRAS, District Judge. The questions involved in these cases are largely the same, and they were argued and submitted at the same time, and the court will therefore deal with them in the one opinion.

The principal question discussed by counsel is common to both cases, and is fairly presented by the motion to quash the indictment in the case against Mullin. There are four counts therein, three of which charge offenses of the same nature, to wit, obstructing and resisting an officer of the United States, to wit, certain Indian policemen, in serving and executing certain legal writs placed in their hands: and the remaining count charges the offense of assaulting and beating Henry French when engaged in serving a legal writ addressed to him as an officer of the United States, he being an Indian policeman on the Winnebago reservation, and as such lawfully authorized to serve such writ. The three counts first named are in substance identical, so far as the questions presented by the motion are involved, and therefore it is only necessary to set forth the nature of the first count, which charges the defendant with unlawfully obstructing, resisting, and opposing Henry French, Jr., an officer of the United States, to wit, an Indian policeman of the United States for the Winnebago reservation, in serving and executing a legal writ and process of the following tenor:

"United States Indian Service, Omaha & Winnebago Agency, Nebraska.

"April 18th, 1895.

"Policeman Henry French, Jr., in Charge of Indian Police—Sir: You will proceed at once, with the Indian police, armed, and remove from the following described premises any chattels or things belonging to one George Mannion: E. ½ of the S. E. ¼, and the S. ½ of the N. E. ¼, of section 31, and the W. ½ of the S. W. ¼ of section 32, township 26, range 7 E. If any one is occupying the above-described land, you will remove them therefrom. You will leave at the house, with J. R. Waterman, 2 police, armed, who will protect the said Waterman, and keep him in possession of the premises.

"Respectfully, Wm. H. Beck,

"Captain 10th Cavalry, Acting United States Indian Agent."

This indictment is based upon the provisions of section 5398 of the Revised Statutes, which enacts that:

"Every person who knowingly and willfully obstructs, resists, or opposes any officer of the United States in serving, or attempting to serve or execute, any mesne process or warrant, or any rule or order of any court of the United States, or any other legal or judicial writ or process, or assaults, beats, or wounds any officer or other person duly authorized in serving or executing any writ, rule, order, process, or warrant, shall be imprisoned not more than twelve months, and fined not more than three hundred dollars."

The principal question presented by the motion is whether resistance to a member of the Indian police, when engaged in enforcing an order of the kind issued by Capt. Beck, in his capacity of Indian agent for the Winnebago reservation, is within the provisions of the section just quoted; it being claimed in support of the motion that a member of the Indian police is not an officer of the United States, and that an Indian agent has no authority to issue any order, writ, or process, within the meaning of the statute.

Indian agents are appointed by the president, with the assent of

the senate, and are therefore "officers of the United States," within the meaning of that term as defined by the supreme court in U. S. v. Germaine, 99 U. S. 508, in which case it was held that there are two classes of appointments that come within the meaning of the term "officer," as used in the constitution, to wit, the one wherein the president appoints with the advice and consent of the senate, and the other wherein the president alone, the courts of law, or heads of departments, have authority to appoint. By section 2062 of the Revised Statutes, the president is authorized to require of any military officer the performance of the duties of an Indian agent; and thus it appears that Capt. Beck, when engaged in performing the duties of Indian agent at the Winnebago reservation, was an officer of the United States duly charged with the performance of the duties of such office. The Winnebago reservation was duly set apart for the use and occupancy of the Winnebago tribe of Indians by a treaty made March 8, 1865 (see 14 Stat. 671); and thus the reservation passed under the control of the interior department, and it does not appear that such control has ever been terminated. Allotments in severalty, under the statutes providing therefor, have been made of portions of the reservation, but the fee title of the lands remains in the United States, being held in trust for the Indians; and the treaty duty is still in force, whereby the United States agreed to protect the Indians in the use and occupancy of the reservation. By section 2118 of the Revised Statutes, it is provided that:

"Every person who makes a settlement on any lands belonging, secured, or granted by treaty with the United States to any Indian tribe, or surveys or attempts to survey such lands, or to designate any of the boundaries by marking trees, or otherwise, is liable to a penalty of one thousand dollars. The president may, moreover, take such measures and employ such military force as may judge necessary to remove any such person from the lands."

And by section 2119 it is enacted that:

"Whenever any Indian, being a member of any band or tribe, with whom the government has or shall have entered into treaty stipulations, being desirous to adopt the habits of civilized life, has had a portion of the lands belonging to his tribes allotted to him in severalty, in pursuance of such treaty stipulations the agent and superintendent of such tribe shall take such measures, not inconsistent with law, as may be necessary to protect such Indian in the quiet enjoyment of the lands so allotted to him."

By section 2149 it is declared that:

"The commissioner of Indian affairs is authorized and required, with the approval of the secretary of the interior, to remove from any tribal reservation any person being therein without authority of law, or whose presence within the limits of the reservation may, in the judgment of the commissioner, be detrimental to the peace and welfare of the Indians; and may employ for the purpose such force as may be necessary to enable the agent to effect the removal of such person."

It seems to me clear, beyond question, that the duty and obligation rests upon the executive branch of the government of the United States to protect the Winnebago Indians in the possession, use, and occupancy of the reservation set apart for them by the treaty of March 8, 1865. The treaty, by express terms, imposed this

duty upon the United States, and the fact that part of the reservation has been allotted in severalty to a portion of the tribe does not release the United States from this treaty obligation. These allotments are not yet perfected. The acts of congress providing therefor expressly restrict all right of alienation, and all right of contract between the Indians and the whites, for a period of 25 years. It cannot be known whether all or any of the allottees in severalty will remain on the lands assigned for the period of 25 years, and it may be that, by abandonment, the allottees may fail to perfect an alienable title to the lands allotted them. Such failure, however, would not deprive the tribe, as a whole, of their right to the reservation; and it would still be the duty of the United States, under the terms of the treaty, to protect the tribe in the use and occupancy of the reservation. Much stress was laid in the argument upon the fact that, under the acts of congress providing for the allotment of lands in severalty, the allottees become, and are declared to be, citizens of the United States; it being assumed that, so soon as the Indian becomes a citizen of the United States, the government is relieved from all treaty obligations to him. The conclusion is not derivable from the premise. Certainly, the government is as much obliged, to its own citizens, to perform its duties and obligations, as it is to those who are not citizens. The question is, does the duty exist? If so, it should be performed, to citizen or noncitizen, alike. It not unfrequently happens that, in cases of the acquisition of territory by conquest or purchase, the government binds itself to confer citizenship upon the inhabitants of the acquired territory, and also to recognize and protect the title held by them; and it has never been held that the acquisition of the status of citizenship deprives the individual of his right to insist that the treaty obligation, providing for the recognition and protection of the title to property, should be observed and fulfilled. For illustration, suppose an act declaring that all Indians within the state of Nebraska should henceforth be citizens of the United States; would such enactment, and the consequent acquisition of citizenship by the Indians, terminate all treaty obligations on part of the United States to them, and thereby relieve the United States from the duty of protecting the Indian in the use and occupancy of the lands reserved and set apart for him? The United States would still hold the title of the lands in trust for the Indians, and the conditions of the trust would not be changed by the fact that the Indian had become a citizen. It must therefore be true that the United States, notwithstanding the fact that portions of the Winnebago reservation have been allotted in severalty to a portion of the tribe, or if it were true that the entire reservation had been allotted in severalty, is yet bound, by its treaty stipulation, to protect the Indians, whether citizens or wards of the nation, in the use and occupancy of the reservation lands which have never yet been opened to occupancy by the whites. A right of occupancy thus acquired by an Indian tribe in virtue of treaty stipulations is a right that can only be dealt with by the United States, as is expressly held in

Beecher v. Wetherby, 95 U. S. 517–525, and U. S. v. Thomas, 151 U. S. 577–583, 14 Sup. Ct. 426; and it is not claimed that either the executive or legislative branch of the government has, by direct action, in any way terminated the right of the Winnebago Indians to the reservation in question, or that by convention with the Indians, or in any other mode, the United States has sought to relieve itself from the duty it assumed, in the treaty of March, 1865, of protecting these Indians in the possession of the reservation lands. It being true, then, that the federal government is still charged with this duty, it follows that the executive branch of the government has full power and authority to do whatever may be necessary for the proper performance of this duty. Thus, in Ex parte Siebold, 100 U. S. 371, it is said:

"It is argued that the preservation of peace and good order in society is not within the powers confided to the government of the United States, but belongs exclusively to the states. Here, again we are met with the theory that the government of the United States does not rest upon the soil and territory of the country. We think this theory is founded on an entire misconception of the nature and powers of that government. We hold it to be an incontrovertible principle that the government of the United States may, by means of physical force exercised through its official agents, execute on every foot of American soil the powers and functions that belong to it. This necessarily involves the power to command obedience to its laws, and hence the power to keep the peace that extent * * *. It must execute its powers, or it is no government. It must execute them on the land as well as on the sea, on things as well as on persons, and, to do this, it must necessarily have power to command obedience, preserve order, and keep the peace; and no person or power in this land has the right to resist or question its authority, so long as it keeps within the bounds of its jurisdiction."

In Re Neagle, 135 U. S. 63, 10 Sup. Ct. 658, will be found a full discussion of the powers of the government, and especially of the executive branch thereof, in which it is pointed out that the constitution (section 3, art. 2) declares that the president "shall take care that the laws be faithfully executed"; that this duty extends, not only to the enforcement of the laws of congress, of the treaties entered into by the United States, but also includes all the rights, duties, and obligations growing out of the constitution itself, out of our international obligations, and all other matters placed, by the nature of our government, under the control of the national executive. It is also therein pointed out that, to aid the chief executive in the discharge of the manifold duties thus imposed upon him, provision is made for the appointment of executive departments, headed by cabinet ministers, who in turn have power to appoint subordinate officers and agents to aid in the proper discharge of the executive duties of the government. From these considerations it follows that the national government, by the terms of the treaty entered into with the Winnebago Indians, is charged with the obligation of protecting the Indians in the use and occupancy of the reservation lands; that this duty has not been terminated by the allotment of the lands in severalty; that the executive department of the government is charged with the duty to do whatever may be necessary to protect the Indians in the use and occupancy of these

lands, and to oust intruders therefrom; that the executive has the right, under the terms of the treaty with the Winnebagoes, and the provisions of sections 2118, 2119, and 2149 of the Revised Statutes, already quoted, to remove from these lands any one, not a member of the tribe, who may attempt to use, occupy, or cultivate the same without the authority of the interior department; that this executive duty of freeing the lands from intruders, and protecting the use and occupancy of the Indians, may be executed by the Indian agent, as an officer of the government; that in the performance of this duty such agent may employ such force and assistance as may be necessary to accomplish the purpose, and all persons who endeavor to prevent, by force, such agent from performing this duty imposed upon him, thereby place themselves in the position of wrongdoers, in that they endeavor, by force, to prevent an officer of the government from performing a legal duty required of him.

From the evidence submitted to the court, it appears that a number of persons, not members of the Winnebago tribe, had gone upon the reservation, and were cultivating the lands, claiming the right so to do under leases executed by the Indian allottees. The department of the interior, refusing to recognize the validity of these leases, had undertaken to remove the lessees, as being intruders upon the reservation; and thereupon, for the purpose of determining the validity of the leases, a suit was brought in the United States circuit court for this district, by the Flournoy Land & Stock Company, against William H. Beck, which case was carried before the circuit court of appeals for the Eighth circuit; and by an opinion rendered December 10, 1894, it was held by that court that the leases in question were wholly void. See 12 C. C. A. 497, 65 Fed. 30. Thereupon Beck, as Indian agent, was directed by the interior department to remove the intruders upon the reservation; and, to that end, he issued orders in writing to the Indian police, in the form already set forth. The Indian police is a force organized under rules and regulations adopted by the interior department, the agent being commander thereof, and is the ordinary means relied upon by the agent and the department for enforcing the orders of the department, for keeping peace upon the reservation, and otherwise enforcing obedience to the laws of the United States and the regulations of the department of the interior in force upon the reservation. Thus we reach the principal question arising in these cases, and that is whether a written order issued by Capt. Beck, in his capacity of Indian agent in charge of the Winnebago reservation, directed to the person in immediate charge and command of the Indian police upon the reservation, requiring such person to remove intruders from the lands of the reservation,—such order being so given for the purpose of enforcing the instructions of the department of the interior, and which instructions were given for the purpose of fulfilling the treaty obligations of the United States due to the Winnebago tribes,—is, or not, a writ or process, within the meaning of section 5398 of the Revised Statutes. Upon the part of the defendant, Mullin, and the petitioners, Garrett and Myers, it is claimed that no writ or process comes within the purview

of this section, except an order, writ, or process issued by a court, or, in other words, that the section applies only to strictly judicial process. The language of the section clearly shows that it was not the intent to thus limit the protection afforded by the action in question. The first clause of the section is limited to the process, warrant, order, or rule issued by a court of the United States, but this is followed by the broad terms, "or any other legal or judicial writ or process," and these words clearly show that the section was intended to include, not only writs, process, rules, and orders issued by the judicial branch of the government, but all legal writs or process properly issuable by any other governmental authority. In fact, even as to judicial writs or process (that is, writs or process issued under order of a court or judge, and directed to the marshal for execution), the power thus set in motion is that of the executive branch of the government. Thus, in Re Neagle, 135 U. S. 63, 10 Sup. Ct. 658, the supreme court, in speaking of the powers of the judicial branch of the government, said:

"The ministerial officers through whom its commands must be executed are marshals of the United States, and belong emphatically to the executive department of the government. They are appointed by the president, with the advice and consent of the senate. They are removable from office at his pleasure."

Nearly all judicial writs and process addressed to the marshal issue in the name of the president of the United States. The judicial branch hears, decides, and declares its judgment upon the questions brought before it; but when action is needed to enforce the judgment of the court, ordinarily, the appeal is to the executive powers of the government. The power to issue writs in the name and by the authority of the president of the United States is not because, in any sense, the president is a member of the judicial branch, but because he is the head and chief of the executive department of the national government. Therefore, the fact that, in a particular instance, a writ is not based upon an order or judgment of a court or judge, does not tend to show that it may not be a legal writ. Whenever, by the provisions of the constitution, or of a treaty made in pursuance thereof, or of an act of congress, the executive department of the government is charged with the performance of some duty or obligation, and, to secure due performance thereof, it becomes necessary that certain action be taken, and the executive department, acting through the proper channel, issues a written order or mandate requiring the doing of the appropriate act, and directing a proper person to execute such mandate or command, such a writing is, in my judgment, a legal writ, within the meaning of the section of the statute now under consideration. By the express terms of the treaty of March 8, 1865, and by the provisions of sections 2114, 2118, 2149, and 2119 of the Revised Statutes, the executive department is charged with the duty of removing all intruders from the Winnebago reservation, and protecting the Indians in the use and occupancy of the reservation; and by the rules and regulations of the department of the interior, as well as by the express provisions of section 2119, the Indian agent is

the officer charged with the performance of this duty, and an order in writing by him, issued to secure the performance of the duty thus imposed upon him as an executive officer of the government, being an order requiring obedience upon the part of all within its terms, is therefore a legal writ, and any one who willfully obstructs or resists an officer of the United States in the service or execution of such an order is guilty of the offense defined in section 5398, to wit, of obstructing or resisting the service or an execution of a legal writ.

But it is urged in further support of the motion that this section only declares illegal resistance or obstruction to the service of a legal writ by an officer of the United States; that the first, third, and fourth counts in the indictment expressly charge the offense to be that of resisting an officer of the United States, and that the counts further show that the offense could not have been committed, because it is averred therein that the persons endeavoring to execute the writs in question were members of the Indian police, and were acting in that capacity in making service of the writs, and therefore it appears that they were not officers of the United States, within the meaning of the section. To sustain an indictment based upon the first part of section 5398, it must appear that the defendant obstructed, resisted, or opposed an officer of the United States in serving or executing some one of the writs, processes, rules, or orders named in the section. In U. S. v. Germaine, 99 U. S. 508, and U. S. v. Mouat, 124 U. S. 303, 8 Sup. Ct. 505, it is expressly ruled that, strictly speaking, by the term, "officers of the United States," is meant those persons who are appointed by the president, with the advice and consent of the senate, or by the president alone, or by a court of law, or by a head of department (that is, by a cabinet officer), and that, when congress has intended to include others than persons thus appointed within the meaning of the statute, it employs additional words, such as "agent," "person lawfully employed or lawfully authorized," or other apt words evidencing the intent to extend the statute to others than those who are, strictly speaking, officers of the United States. An example of this is found in the section under consideration; for in the latter part, which provides for the punishment of those who may assault, beat, or wound persons engaged in serving or executing writs, process, rules, or orders, it, in express terms, speaks of officers or other persons lawfully authorized, thus clearly indicating that the fact that a person may be lawfully authorized to serve a writ or process does not constitute him an officer of the United States. In view of the ruling of the supreme court in the cases just cited, I am constrained to hold that the words, "any officer of the United States," as used in section 5398, cannot be construed to include others than those appointed by the president, the courts of law, and heads of departments; and therefore when it is charged, as it is in the first, third, and fourth counts of the indictment against Mullin, that he is guilty of a violation of the statute, in that he resisted Henry French, then and there being an officer of the United States, to wit, an Indian policeman of the United States for the Winnebago reservation, in serving and executing a legal writ, it is made clear that the

purpose is to charge the defendant with the offense of unlawfully resisting an officer of the United States in the performance of his duty in serving the named writ, and yet it is shown upon the face of these counts that the person resisted was not an officer of the United States, for the reason that the members of the Indian police are not appointed by the secretary of the interior, and are not, therefore, included in the term "officers of the United States." The motion to quash these counts of the indictment must therefore be sustained.

In the second count the charge is that the defendant did unlawfully assault, beat, and wound Henry French, an officer of the United States, to wit, an Indian policeman for the Winnebago reservation, while, as such officer, he was serving and executing the writ issued to him by the Indian agent. This count charges clearly that French was assaulted and beaten by the defendant while he was serving a legal writ, having lawful authority to serve the same; he being an Indian policeman, and as such being an officer of the United States. The latter averment can be rejected as surplusage, and the count is clearly good under the second clause of the section. Wherefore the motion to quash this count is overruled.

In regard to the petitioners, Myers and Garrett, it appears that they were arrested and brought before Ashley Londrosh, a justice of the peace in Thurston county, Neb., upon an information filed by Agent Beck, charging them with resisting the service and execution of legal writs issued by him, and placed for service in the hands of certain members of the Indian police, and with assaulting the policemen when engaged in the performance of their duty in serving the writs in question. The petitioners gave bond for their appearance before the justice on a day in the future to answer to these charges, and were released from actual custody and restraint. Subsequently, their bondsmen made efforts to relieve themselves from further liability, by seeking to deliver the petitioners into custody. Assuming, without so deciding, that thereby petitioners were again placed in custody, and are in some sense restrained of their liberty, the obligation upon them is to appear at the proper time, before the justice, for the purpose of a hearing upon the question whether cause exists for holding them for appearance before the proper court upon any of the matters alleged in the information. If it be true that the petitioners did assault any member of the Indian police upon the Winnebago reservation, when engaged in serving or executing the written mandate of the Indian agent of the character hereinbefore discussed, then ground may exist for holding the petitioners for their future appearance; and the right of the justice to so hold them, if the proper facts are made to appear at the hearing, is not defeated because, in the information, it is averred that the policemen are officers of the United States. Under these circumstances, it cannot be said that petitioners are unlawfully deprived of their liberty, and the writ of habeas corpus heretofore granted must be, and is hereby, discharged.