Decided at PENDLETON, 13 August, 1898.

## MOSGROVE *v.* HARPER.

[ 54 Pac. 187 ]

</div>

1. INDIAN LANDS—POWER OF SECRETARY OF INTERIOR.—The secretary of the
interior has no power to cancel a lease of land that has been allotted to an
Indian, and by him leased pursuant to the prescribed regulations with the
approval of such secretary, and this for at least three reasons: (1) The lessee
has acquired a vested interest of which he cannot be deprived without some
legal proceeding, (2) the power to cancel has not been conferred on the secre-
tary by congress, and (3) the exercise of this unwarranted authority is not
necessary for the protection of the Indians or the public, since the courts af-
ford appropriate relief in cases of wrong.

2. ALLOTTED LAND—CANCELLATION OF LEASE.—The secretary of the interior
is not authorized by virtue of the provisions of the law giving him general
supervision of the public business relating to Indian affairs and arising out

of Indian relations* to cancel a lease of allotted lands regularly made by an Indian under 26 Rev. Stat. U. S. 795.

3. IDEM.—Nor does the secretary derive such power from the law making him the superior officer of the land department with control over the proceedings for the acquirement of title to public lands.*

4. POWER OF SECRETARY OF THE INTERIOR — CONSTRUCTION OF LEASE.— A provision in a lease of allotted Indian lands that on the occurrence of certain contingencies the lease shall terminate and the lessor have the right of re-entry does not authorize the secretary of the interior to decide that such contingencies have happened — that question can be decided only by the courts.

From Umatilla : STEPHEN A. LOWELL, Judge.

Suit for an injunction by Matt. Mosgrove against Geo. W. Harper and Julia and D. St. Dennis to prevent the plaintiff from being forcibly ejected from a tract of land in the Umatilla Indian reservation. Plaintiff prevailed and defendants appeal.

AFFIRMED.

For appellants there was a brief over the names of *Robert J. Slater*, *John H. Hall*, United States attorney, and *William Parsons*, with an oral argument by *Mr. Slater*.

For respondent there was a brief over the name of *Balleray & Hailey*, with an oral argument by *Mr. John J. Balleray*.

MR. JUSTICE BEAN delivered the opinion.

This is an appeal from a decree restraining the defendant George W. Harper, United States Indian agent for the Umatilla Indian reservation, and his co-defendants,

*NOTE.—U. S. Rev. Stat. Sec. 441. "The secretary of the interior is charged with the supervision of public business relating to the following subjects : * * * (2) The public lands including mines; (3) the Indians, etc. * * *"

Sec. 462. "There shall be in the department of the interior a commissioner of Indian affairs who shall be appointed by the president. * * *"

Sec. 463. "The commissioner of Indian affairs, under the direction of the secretary of the interior, and agreeable to such regulations as the president may prescribe, have the management of Indian affairs, and of all matters arising out of the Indian relations."— REPORTER.

from interfering with plaintiff's possession of eighty acres of land within the limits of such reservation which had been allotted to the defendant Julia St. Dennis, an Indian woman, under the act of congress of March 3, 1885 ( 23 Stat. 340 ), and by her leased to the plaintiff by virtue of the provisions of section 3 of the act of 1891 ( 26 Stat. 794 ), upon the terms and conditions prescribed by the secretary of the interior, and with his approval. About a year after the execution and approval of the lease, and after the plaintiff had entered into possession thereunder, the Indian allottee filed with the defendant Harper a petition alleging that the lease had been obtained from her by fraud and imposition ; that she had executed it under duress ; that plaintiff had not paid the rent as therein stipulated, and had suffered waste to be committed on the premises ; and asking that the secretary of the interior cancel and annul the lease, and restore her to the possession of the leased premises. By direction of the department of Indian affairs, the plaintiff was cited to show cause, if any he had, why the prayer of the petition should not be granted ; and, on a hearing, the secretary of the interior decided that the allegations thereof were true, ordered the lease canceled and annulled, and directed the local Indian agent to dispossess the plaintiff ; and he was engaged, with the assistance of his Indian police, in the summary execution of such order when this suit was commenced, and the only question presented thereby is whether the secretary of the interior had the power or authority to cancel or annul the lease after it had been approved by him. The general rule that the only tribunal authorized to cancel or annul a contract is a court of competent jurisdiction is not questioned by counsel for the defendants ; but he contends that the secretary of the interior had the right to cancel the lease in question by virtue of the treaties

and acts of congress under which the title to the prem-
ises is held and was leased by the allottee, and his gen-
eral supervision and control of Indian affairs, as well as
by virtue of the terms of the lease itself.

By a treaty between the United States and the Walla
Walla, Cayuse and Umatilla tribes of Indians, concluded
on June 9, 1855 ( 12 Stat. 945 ), the several tribes ceded
to the United States all the land formerly occupied by
them except a particularly described portion thereof in
what is now Umatilla County, which it was stipulated
should be set apart as a residence for the exclusive use of
such Indians, and, for the purposes contemplated, should
" be held and regarded as an Indian reservation." Soon
after the conclusion of this treaty, the several tribes
went on the land set apart and reserved for them, and
have ever since continued to live thereon under the
charge and control of Indian agents appointed by the
general government from time to time to supervise their
affairs.   By the allotment act of March 3, 1885 ( 23 Stat.
340 ), it is provided that the lands set apart as therein
required " shall thereafter constitute the reservation for
said Indians, and within which the allotments herein
provided for shall be made," and that the president shall
cause patents to issue to the allottees, " which shall be
of the legal effect, and declare that the United States
does and will hold the land thus allotted, for the period
of twenty-five years, in trust for the sole use and benefit
of the Indian to whom such allotment shall have been
made, or in case of his decease, of his heirs according to
the laws of the State of Oregon, and that at the expira-
tion of said period the United States will convey the
same by patent to said Indian, or his heirs as aforesaid,
in fee, discharged of said trust and freed of all charge or
incumbrance whatsoever." It is also declared that " if
any conveyance is made of the land set apart and allot-

ted as herein provided, or any contract made touching the same, or any lien thereon created before the issuing of the patent herein provided, such conveyance, contract, or lien shall be absolutely null and void." Congress subsequently provided, however, that whenever it shall be made to appear to the secretary of the interior that, by reason of age or other disability, any allottee of Indian lands cannot personally and with benefit to himself occupy or improve his allotment, or any part thereof, the same may be leased " upon such terms, regulations, and conditions as shall be prescribed " by such secretary for a term not exceeding three ( afterwards enlarged to five ) years, for farming or grazing purposes ( 26 Stat. 795 ) ; and under this statute the lease in question was made.

1. It is manifest, we think, from an inspection of the various acts to which reference has been made, that congress has not, by any provisions therein, either directly or indirectly empowered or authorized the secretary of the interior or any other special tribunal to cancel or annul a lease made by an Indian allottee after the same has been approved by him. It can be made in the first instance only under certain circumstances, and by the consent and approval of such officer ; but after it has been executed by an allottee competent to enter into such an agreement, and has been approved, it becomes a completed contract, binding upon all the parties, and can be cancelled or abrogated only in the same manner, for the same reason, and by the same tribunal, as any other similar contract. The land, it is true, notwithstanding the allotment, is within an Indian reservation, and it and the allottee are under the general supervision and control of the secretary of the interior ; but this power of supervision is not an absolute or unlimited one. It clearly cannot be exercised to deprive any person of the

right lawfully acquired under a lease made with the allottee in the manner provided by law. By such a contract the lessee secures a vested interest, of which he can no more be deprived by an order of the secretary of the interior than he can be deprived by such order of any other property lawfully acquired. If the lease is secured through fraud or imposition, the courts of the country are open to the injured party, and the question involved can there be tried out, under the forms of law and according to the procedure provided in such cases, but the secretary of the interior has been vested with no power or authority to right the wrong. His authority over the matter, so far as the validity of the contract is concerned, ceased when it was entered into by a person competent to make such a contract with his consent, and according to the rules and regulations prescribed by him.

But it is urged that the leases of Indian lands are sometimes secured by fraud and imposition, and are often imprudently entered into by the allottee, and therefore public injury and individual hardship will ensue if the secretary of the interior, who has general charge and supervision of Indian affairs, has no authority to cancel and annul such a contract when made by the wards of the government, and to summarily eject the lessee from the land. But a sufficient answer to this contention is that no such power has been conferred upon him, and that the courts of the country are constituted for the purpose of administering appropriate relief in such cases. And the assumption of a power not conferred by law finds no justification in the fact that a mischief may be thereby suppressed, or a particular right maintained. If, in the administration of Indian affairs, such a power ought to have been vested in the secretary of the interior over contracts of leasing made by the allottees, congress

alone could have conferred it.   But, no such power hav-
ing been conferred, its existence must be denied.

2. It is sought to find authority for the action of the
secretary of the interior in the provisions of the law giv-
ing him general supervision of the public business relat-
ing to Indian affairs, and arising out of Indian relations.
But, as already intimated, the power thus conferred does
not authorize him to deprive any person of vested rights
acquired under a contract lawfully made with an Indian,
whether it be a contract of leasing or any other valid
contract.

3. Nor do we think any support for the position of
counsel for the defendants can be found in the holdings
of the federal courts touching the power of the secretary
of the interior as the superior officer of the land depart-
ment over the proceedings provided by law for the acqui-
sition of title to the public lands.   The land department
is charged with the duty of supervising the disposition
of the public domain ; and so long as the legal title
remains in the government, and the proceedings for
acquiring it are *in fieri*, it has jurisdiction to hear and
determine questions arising therein ; but its power ceases
whenever the last official act necessary to perfect the
title to the successful claimant has been performed.
Thereafter any wrong which may result from the action
of the department must be corrected by the courts :   *U. S.*
v. *Schurz*, 102 U. S. 378 ; *Moore* v. *Robbins*, 96 U. S. 530.
So, in the case at bar, so long as the proceedings looking
to the leasing of land by an Indian allottee are *in fieri*, the
power and jurisdiction of the secretary of the interior
over the matter is exclusive, and he can prescribe such
rules and regulations in reference thereto as he may
deem necessary.   Indeed, no valid lease can be made by

such allottee without his consent : *Beck* v. *Flournoy Live-stock Co.*, 12 C. C. A. 497, 65 Fed. 30 ; *U. S.* v. *Flournoy Livestock Co.*, 69 Fed. 886 ; *Id.*, 71 Fed. 576.   But after it is once regularly executed, containing such terms and provisions as he may prescribe, and has been approved by him, his jurisdiction over the validity and terms of the contract ceases.

4. It is also claimed that he had power to cancel and annul the lease for non-payment of rent, and for the commission of waste on the leased premises ; but we can find no warrant in law nor in the provisions of the lease itself to support such claim.   By the terms of the lease, which was evidently prepared in the department of the interior, and is very carefully drawn, all the parties thereto covenant and agree that it is made with the express proviso that if any of the rent shall remain unpaid for thirty days after the same shall have become payable, or if the lessee shall, in violation of his agreement, and without the consent of the lessor and the secretary of the interior, assign the lease, or underlet or otherwise dispose of the whole or any part of the leased premises, or use the same for purposes other than those provided for in the lease, or shall commit waste or suffer it to be committed on such premises, or misuse or fail to take proper care of the same, or shall pay or surrender the rent to any person other than the lessor or her executor or administrator or such person as she may assign the same to, with the approval of the secretary of the interior, or such person as the secretary of the interior may appoint to receive the same, or shall fail to keep and perform any other agreement or covenant contained in the lease, it shall thereupon expire, at the option or election of the party of the first part, or her executors, administrators or assigns, with the approval of the secre-

tary of the interior, without notice or demand, and she may re-enter upon the premises and repossess and recover the same to all intents and purposes as though the lessee had never occupied the same, and, without such re-entry, and without demand for rent, she may recover possession thereof, in the manner prescribed by law relating to proceedings in such cases. The effect of these several provisions is that, upon the happening of either ·or any of the events therein specified, the lease shall terminate at the option of the lessor, and she shall have the immediate right to re-enter and repossess the leased premises. But we know of no provision of law, and none has been called to our attention, which authorizes the secretary of the interior to adjudge and determine that the contingencies upon which the lease should terminate have happened. That is a matter which belongs to the judicial, and not the executive, department of the government. The right of the lessor, when denied, to re-enter and take possession of the leased premises under and by virtue of the several provisions of the lease, can only be tried out in a court of law, and not by some executive department of the government. It follows from these views that the decree of the court below is right, and must be affirmed.

<div align="right">AFFIRMED.</div>

<div align="center">Decided at PENDLETON, 13 August, 1898.</div>