Argued March 3, decided April 7, 1908.

## SMITH *v.* MOSGROVE.

[94 Pac. 970.]

INDIANS—LANDS—TITLE—JURISDICTION OF STATE COURTS.

1. So long as the United States recognizes the national character of Indians, and they are under the protection of treaties and laws of Congress, their property is outside the operation of state laws, and the state courts have no jurisdiction over controversies concerning the titles to Indian allotments while the same are held in trust by the United States.

SAME—TRESPASS.

2. Under Const. Or. Art. 1, § 10, which declares that "every man shall have remedy by due course of law for injury done him in person, property, or reputation," an Indian has as much right to resort to the state courts having jurisdiction of the subject-matter, to recover for a tort against his person or property, as any other suitor, and it is not material that the wrong was committed against the possession of land allotted to him under the acts of Congress providing for allotments of land in severalty to Indians.

SAME.

3. The law is, that an occupant of land, the title to which is in the government, may maintain trespass against one who wrongfully interferes with his posession to his injury; and so, though the government by Act March 3, 1885, c. 319, 23 Stat. 341, and Act Feb. 8, 1887, c. 119, 24 Stat. 388, and Act Feb. 28, 1891, c. 383, 26 Stat. 795, holds in trust the legal title to land allotted in severalty to an Indian, the latter, who is in the rightful possession of the land and has the beneficial use therein, may recover damages for an unlawful trespass upon it.

SAME.

4. By Rev. St. U. S. §§ 2118, 2119, 2124, the executive branch of the government is bound to protect Indians residing on a reservation in the possession and occupancy of their land; but this affords no remedy to the Indian for an injury to his personal or property rights, and for such remedy he must go to some court of competent jurisdiction.

SAME.

5. Where trespass has been committed on land held by an Indian through allotment from the government, the trial of an action by the Indian against the trespasser, will not interfere with any of the rights given to the Secretary of the Interior or the federal court over the Indian or his land, the action of trespass not necessarily involving the question of title.

From Umatilla: HENRY J. BEAN, Judge.

This is an action commenced in the Circuit Court of Umatilla County by Philomme Smith against James Mosgrove, William Mosgrove and Mat Mosgrove, to recover damages for trespass upon real property. On motion of defendants, an order was entered in the court below, dismissing the action for want of jurisdiction of the subject-matter, from which the plaintiff appeals.     REVERSED.

For appellant there was a brief over the names of *Mr. Robert J. Slater* and *Mr. J. T. Hinkle,* with an oral argument by *Mr. Slater.*

For respondent there was a brief with an oral argument by *Mr. James A. Fee.*

MR. CHIEF JUSTICE BEAN delivered the opinion.

This is an action to recover damages for trespass upon real property. The pleadings are voluminous, and present important questions for ultimate determination; but for the purpose of this appeal, it is not necessary to allude to them. It is sufficient that this is an action brought by an Indian allottee of land on the Umatilla reservation against a white man to recover damages for an alleged unlawful trespass upon such land. After issue had been joined, the court below, on motion of defendants, dismissed the action for want of jurisdiction of the subject-matter, and this presents the only question for determination at this time.

1. Defendants' contention is, that the State courts have no jurisdiction over the property or property rights of Indian allottees residing within the reservation and under charge of an Indian agent. In many respects this position is sound. So long as the United States recognizes the national character of Indians, and they are under the protection of treaties and laws of congress, their property is withdrawn from the operation of state laws (*Kansas Indians,* 5 Wall. 757: 18 L. Ed. 667), and the state courts have not been given jurisdiction over controversies concerning the titles to Indian allotments, while the same are held in trust by the United States: *McKay* v. *Kalyton,* 204 U. S. 458: 27 Sup. Ct. 346: 51 L. Ed. 566).

2. It does not follow, however, that an Indian allottee may not invoke the aid of a state court for protection or enforcement of his personal or property rights when invaded by a white person. The constitution of this State

declares that "every man shall have remedy by due course
of law for injury done him in person, property or reputa-
tion" (Article 1, § 10), and it certainly would be a vio-
lation of both the letter and spirit of this constitutional
provision for a state court to refuse its aid, when invoked
to protect the rights of a suitor, on the sole ground that
the party seeking its aid was an Indian.   And such is not
the law.    There are numerous cases to be found in the
books in which Indians have prosecuted actions and suits
in state courts: 22 Cyc. 116; 16 Am. & Eng. Ency. Law,
216; *Bem-Way-Bin-Ness* v. *Eshelby,* 87 Minn. 108 (91
N. W. 291).   In *Felix* v. *Patrick* (C. C.), 36 Fed. 457,
which was a suit in a federal court by an Indian to en-
force a trust in real property, the complainant's bill was
dismissed on the ground of laches, it being held that the
state courts were open to him, and that he had unreason-
ably delayed invoking their aid, Mr. Justice BREWER re-
marking that "as a matter of fact Indians are frequent
suitors in the courts of the various states." On an appeal
the decree was affirmed on the same ground, the Supreme
Court saying:    "The courts of Nebraska were open to
them as they are to all persons, irrespective of race or
color." *Felix* v. *Patrick,* 145 U. S. 317 (12 Sup. Ct. 862:
36 L. Ed. 719); *Y-Ta-Tah-Wah* v. *Rebock* (C. C.), 105
Fed. 257), was an action by a tribal Indian, living on a
reservation, against the agent and another to recover
damages for an alleged false arrest and imprisonment for
the violation of a state law regulating the practice of
medicine.    Subsequent to bringing the action plaintiff
died, and one question in the case was whether the right
of action survived under the state laws.    After referring
to the authorities on the right of an Indian to maintain
an action for the protection of his personal or property
rights, Mr. Justice SHIRAS says:

"These authorities clearly demonstrate that, if it be
true that the defendants were guilty of a trespass to the
person of the Indian, the injured party had the right to

bring suit for the damages caused him in any state court
within whose territorial jurisdiction the defendants re-
side.    The defendants, being citizens and residents of
Iowa, cannot question the jurisdiction of the courts of
Iowa over them, and the Indian, though not a citizen, by
invoking the aid of the court, submits himself to the
jurisdiction thereof, and the court, having obtained juris-
diction over the parties, will apply the law, no matter
what its source, that is applicable to the question in dis-
pute, and the same rule will be followed in cases coming
within federal jurisdiction.    If the defendants, without
right or authority so to do—a question to be solved by
the laws and treaties of the United States—undertook to
subject the Indians to the provisions of the state laws
regulating the practice of medicine therein, and in so
doing committed a trespass on his person, then the com-
mon law would give a right of action therefor, and to en-
force the same the courts, state and federal, were open
to the injured party."

It thus appears that an Indian has as much right to
resort to the state courts having jurisdiction of the sub-
ject-matter to recover for a tort committed against his
person or property as any other suitor.

3. And we do not understand that he is to be denied
this right, because the wrong of which he complains was
committed against the possession of land allotted to him
under the acts of congress providing for allotments of
lands in severalty to Indians.    By act March 3, 1885,
c. 319 (23 Stat. 341), the President was authorized to
cause lands to be allotted to Indians residing on the
Umatilla reservation in certain designated quantities, and
to cause patent to issue to the allottee, "which shall be of
the legal effect, and declare that the United States does
and will hold the land thus allotted for the period of
twenty-five years in trust for the sole use and benefit of
the Indian to whom such allotment shall have been made,
or in case of his decease to his heirs, according to the laws
of the State of Oregon, and at the expiration of said
period, the United States shall convey the same, by patent,
to said Indian or his heirs as aforesaid, in fee, discharged

of such trust and free of all charge or incumbrance what-
soever." By subsequent act Feb. 8, 1887, c. 119 (24 Stat.
388), the allottees are declared to be citizens of the
United States, and to have the benefit of and be subject
to the laws, both civil and criminal, of the state or ter-
ritory in which they may reside, but they are prohibited
from alienating or incumbering the land allotted to them,
or making any contract touching the same. These acts
were passed by congress in furtherance of the general
policy of the government to encourage Indians to abandon
their tribal relations, cease their nomadic habits, and be-
come self-supporting and useful citizens. To this end
definite tracts of land were to be allotted to them in sev-
eralty, without, however, any right to make contracts in
reference thereto, or do more than occupy and cultivate
the land until final patent should issue; the government,
in the meantime, holding the title in trust for the use and
benefit of the allottee under an agreement to ultimately
convey the same by patent to him or his heirs in fee, free
from all charge or incumbrance. These laws, and the
policy of the government, contemplate that the allottee
shall himself occupy, improve, and cultivate the land al-
lotted to him. He is only permitted to lease it when it is
made to appear to the secretary of the interior "that by
reason of age or other disability" he cannot personally
and with benefit to himself occupy and improve the land,
and that only upon such terms, regulations, and condi-
tions as may be prescribed by that officer and no other:
Act Feb. 28, 1891, c. 383, § 3 (26 Stat. 795). The gov-
ernment holds in trust the legal title to land allotted in
severalty to an Indian, but the allottee has the beneficial
use thereof and the right to occupy and cultivate the
same. He is in the rightful possession of the land, and
the law is, that an occupant of public land, the title to
which is in the government, may maintain an action of
trespass against one who wrongfully disposesses him or
otherwise interferes with his possession to his injury:

*Duncan* v. *Potts,* 5 Stew. & P. 82 (24 Am. Dec. 766) ; *Patchen* v. *Keeley,* 19 Nev. 404 (14 Pac. 347) ; *Colwell* v. *Smith,* 1 Wash. T. 92.

4. And this rule has, and we think properly, been applied to an Indian allottee: *Carter* v. *Wann,* 6 Idaho, 556 (57 Pac. 314). Otherwise his fences could be demolished, his crops destroyed, and his improvements razed to the ground by a white person passing through the reservation or living along the boundaries thereof, and he be without remedy. He could not sue in the federal court on the ground of divers citizenship (*Felix* v. *Patrick,* 145 U. S. 317: 12 Sup. Ct. 862: 36 L. Ed. 719), and his case might not come within federal jurisdiction by reason of the questions involved. It is true that by Sections 2118, 2119, 2124, U. S. Rev. St., the duty and obligation is imposed upon the executive branch of the government to protect Indians residing on a reservation in the possession and occupancy of their land, and to take such measures and employ such force as may be necessary for that purpose: *United States* v. *Mullin* (D. C.), 71 Fed. 682. But this affords no remedy to the Indian for an injury to his personal or property rights; and he cannot obtain relief therefor through the exexcutive department. This he must do through some court of competent jurisdiction.

5. The action of trespass does not necessarily involve the question of title (*Newcombe* v. *Irwin,* 55 Mich. 620: 22 N. W. 66), and a trial thereof will not interfere with any of the rights given to the secretary of the interior or the federal court over the Indian or his land.

We are of the opinion that the court below was in error in dismissing the present action for want of jurisdiction, and that the cause should be remanded, with directions to proceed with the trial.          REVERSED.