[No. 11257.　Department One.　January 23, 1914.]

J. W. RIDER, *Appellant*, v. JOHN LACLAIR, *Respondent*.[1]

INDIANS—CONTRACTS—"SALES" OF CATTLE—CHATTEL MORTGAGES—VALIDITY. 3 Fed. Stat. Ann. § 2127, providing that all sales of cattle by an Indian in the Indian country to others than members of his tribe are void, except with the written consent of the agent of the tribe, liberally construed in favor of the Indian, covers chattel mortgages.

CONGRESS—"GENERAL" ACTS—APPROPRIATION BILLS. An act of Congress cannot be said to be not general and limited in its application to the time of its passage, because it was part of a bill appropriating money for a specified year; since general acts of Congress may be tacked onto appropriation bills.

INDIANS—ALLOTMENT—PERSONAL PROPERTY—ALIENATION. An Indian in the Indian country cannot alienate personal property purchased by the United States for the Indian with proceeds of the sale of an allotment which was not subject to alienation, the United

[1]Reported in 138 Pac. 3.

States having received the purchase price and retained title as trustee, thereby manifesting an intent that the proceeds of the allotment shall have the same legal status as the allotment itself; it resting with the United States to say when the trust shall be relinquished.

INDIANS — ALLOTTED LAND — CONTRACTS — MORTGAGE OR SALE OF CROPS—VALIDITY. Since the acts of Congress declaring contracts relative to, or claims growing out of, an Indian's land void unless approved by the Indian agent, do not apply to crop mortgages, under Rem. & Bal. Code, § 3659, making a crop mortgage a chattel, an Indian may mortgage a growing crop on his allotment or sell a crop of hay stacked thereon, in view of the absence of any express statutory prohibition and the present policy of the government to encourage agriculture and business pursuits; but whether the mortgagee may enter before severance, or to foreclose, in the absence of departmental order, is not decided.

INDIANS—INDIAN COUNTRY—"TRADERS"—LICENSES. A person engaged in the business of merchandising in a town outside of an Indian reservation, the Indian title to which has been extinguished, is not a "trader" in the Indian country, requiring a license under 3 Fed. St. Ann. § 2127.

Appeal from a judgment of the superior court for Yakima county, Preble, J., entered April 30, 1913, in favor of the defendant, after a hearing before the court upon an agreed statement of facts, in an action on contracts. Modified.

*Holden & Shumate*, for appellant.

*H. A. LaBerge*, for respondent.

CHADWICK, J.—Plaintiff sets up six separate causes of action, all of which involve the validity of contracts made by a Yakima Indian who lives in the Yakima Indian Reservation. on patented allotted land. The land is patented under certain restrictions, and is held in trust by the government. The Indian defendant has not severed his tribal relations.

In the first cause of action, plaintiff seeks to foreclose a chattel mortgage on certain cattle which were given to defendant for his use and subsistence by the United States government, between one and two years prior to the execu-

tion of the mortgage, during all of which time the cattle were in possession of defendant on his allotment. The manner in which he had acquired the cattle was unknown to plaintiff. The United States did not consent to the mortgage. The court held that the United States was a necessary party to the contract; that the mortgage was void, and a foreclosure was denied. The ruling of the court is based upon the following statute:

"The agent of each tribe of Indians, lawfully residing in the Indian country, is authorized to sell for the benefit of such Indians any cattle, horses, or other live stock belonging to the Indians, and not required for their use and subsistence, under such regulations as shall be established by the Secretary of the Interior. . . . That where Indians are in possession or control of cattle or their increase which have been purchased by the Government such cattle shall not be sold to any person not a member of the tribe to which the owners of the cattle belong or to any citizen of the United States whether intermarried with the Indians or not except with the consent in writing of the agent of the tribe to which the owner or possessor of the cattle belongs. And all sales made in violation of this provision shall be void and the offending purchaser on conviction thereof shall be fined not less than five hundred dollars and imprisoned not less than six months." 3 Fed. Stat. Ann. § 2127.

Appellant contends that this statute prohibts sales, but not mortgages or other pledges. That a mortgage is not a sale but only a lien, has been declared by many, if not a majority, of all the courts, but it seems to us that it can make no difference whether it is a sale or a lien within the statute. It has been so often declared by statute, as well as by judicial decisions, that an Indian is not *sui juris*, that because of his inaptitude and congenital lack of an understanding of values, he should, so long as he maintains his tribal relations, be considered a ward of the government, that we find ready application of one of the first principles of statutory construction, that is, a consideration of the old law, the mischief, and the remedy. From the time of *Worcester v.*

*Georgia,* 6 Pet. 515, 582, down to *United States v. Celestine,*
215 U. S. 278, it has been the rule of all courts to construe
doubtful legislation in favor of the Indian. When so con-
sidered, we have no hesitation in holding that a mortgage
made by an Indian of cattle held in virtue of the statute, is
void when made without the sanction of the agent having
supervision of the affairs of his tribe. The point is made
that the statute is limited in its application to cattle in the
possession of the Indian at the time of the passage of the
act, because the act is not general but was included in a bill
appropriating money for the Indian department for the fiscal
year 1884. Were this a state statute, there might be some
merit in this contention, but it is well known that many of
the general laws passed by Congress are tacked onto ap-
propriation bills and to the sundry civil bill, there being no
constitutional limitation to hamper Congress in this respect.
We think, too, that the act is broad enough to cover the in-
crease of such cattle as the government may furnish.

The fourth cause of action raises the question whether an
Indian can mortgage personal property purchased with the
proceeds of the sale of the allotment of an incompetent In-
dian. We adopt the words of the trial judge:

"I think that upon the sale of an allotment of an incom-
petent Indian, in pursuance of section 1, Act of Congress of
June 30th, 1910, Id. Fed. Stat. Annotated, Supplement 1911,
page 96, or the Act 34 Stat. L. 1018, Id. Fed. Stat. Supple-
ment 1909, page 228, the purchase price received by the
United States has the same legal status as the allotment it-
self had and therefore is not subject to alienation by the In-
dian, and that property purchased (like that in question)
by the United States for the Indian with said purchase
price, the title being taken in the United States, also has the
legal status of the allotment and is not subject to alienation.
In other words, the purchase price of such an allotment
when sold by the United States, or its proceeds when the
United States uses such purchase price to purchase other
property for the Indian, taking title in the name of the
United States, does not become subject to alienation by the

Indian. The United States taking the title in its own name in trust for the Indian is as an express and unequivocal manifestation of its intention not to relinquish the trust— not turn the property over to the Indian to do with as he may please, and it seems to me that it rests exclusively with the United States as trustee and as guardian of the Indian to determine when, if at all, it will relinquish the trust and turn over the property to the Indian to do therewith as he may choose."

The second and third causes of action raise the question whether an Indian can mortgage crops growing òn his allotment, (a) when the mortgage does not provide for entry upon the allotment, and (b), when the only license to enter is that contained in the mortgage. By several statutes, all contracts made by an Indian to whom an allotment has been made "relative to the Indian's land," or "touching the land," or to any "claims growing out of or in reference to annuities" etc., are made void unless approved by the government acting through its proper agency. It is contended that a mortgage of growing crops falls within the prohibition of these statutes. No cases are cited where a crop mortgage given by an Indian has been passed on by the courts. Counsel for appellant say there are none. The writer has been unable to find any. It has been uniformly held that leases and other contracts going to the possession of the Indian's land are proscribed unless approved. *Coey v. Low,* 36 Wash. 10, 77 Pac. 1077; *Smith & Steele v. Martin,* 28 Okl. 836, 115 Pac. 866; *Williams v. Steinmetz,* 16 Okl. 104, 82 Pac. 986.

In this state, our statute, Rem. & Bal. Code, § 3659 (P. C. 349 §§ 1-39), makes a crop mortgage a lien upon a chattel. It passes no interest in the land. The cases cited do not apply. As at present informed, we are disposed to hold, in the absence of a prohibition, that an Indian has power to sell and may give a mortgage upon a crop growing on his allotment. The policy of the government with reference to its Indian wards is not always certain. It seeks to

promote a spirit of independence and an interest in agriculture and business pursuits. It has made the Indian a citizen subject to the general laws of the state. On the other hand, it has limited his rights and privileges both by statute and regulation. The fact that it has more often said what he may not do than what he may do, that is, saying that certain contracts shall be void rather than *all* contracts shall be subject to the approval of the Indian agent, would indicate a purpose to allow him to contract without restraint unless expressly prohibited by a statute or regulation so to do. *Gho v. Julles*, 1 Wash. Ter. 325; *United States v. Paine Lum. Co.*, 206 U. S. 467; *Ke-tuc-e-mum-guah v. McClure*, 122 Ind. 541, 23 N. E. 1080, 7 L. R. A. 782.

"Of late years a new policy has found expression in the legislation of Congress—a policy which looks to the breaking up of tribal relations, the establishing of the separate Indians in individual homes, free from national guardianship and charged with all the rights and obligations of citizens of the United States. Of the power of the government to carry out this policy there can be no doubt. It is under no constitutional obligation to perpetually continue the relationship of guardian and ward. It may at any time abandon its guardianship and leave the ward to assume and be subject to all the privileges and burdens of one *sui juris*. And it is for Congress to determine when and how that relationship of guardianship shall be abandoned. It is not within the power of the courts to overrule the judgment of Congress. It is true there may be a presumption that no radical departure is intended, and courts may wisely insist that the purpose of Congress be made clear by its legislation, but when that purpose is made clear the question is at an end." *Matter of Heff*, 197 U. S. 488, 499.

We have no hesitation in holding that the affirmative acts of Congress with reference to certain kinds of personal property, coupled with the later policy of the government to encourage agricultural pursuits among the Indians and to encourage independence rather than dependence, are sufficient to clearly manifest the purpose of Congress to grant

to the Indians a limited power to contract unless restrained by some departmental regulation. This being so, we hold the crop mortgages to be valid liens. Whether the mortgagees can enter before severance or enter to foreclose, is a question we cannot answer upon the record before us. It may be that the government, in aid of its avowed policy to protect the Indian from the "greed and avarice" of the white man, could prevent an entry by departmental order. The question is hardly before us, and we prefer to reserve it.

The court held, and properly so, that one engaged in the business of merchandising at the town of Wapato, and who bought and sold therein, was not a trader requiring a license to trade in the Indian country. Wapato is located within the boundaries of the Yakima Indian reservation, upon land to which the Indian title has been extinguished. The extinction of the Indian title seems to be the test for determining the character of land, within or adjacent to an Indian reservation. *United States v. Celestine, supra; Ex parte Crow Dog,* 109 U. S. 556; *Bates v. Clark,* 95 U. S. 204.

A trader or seller of merchandise upon eliminated land is not a trader within the Indian country, requiring a license under § 2127 *et seq.* 3 Fed. St. Ann.

The next cause of action pertains to a bill of sale of hay stacked on an allotment. What we have said with reference to crop mortgages covers this cause of action.

The case will be remanded, with directions to enter a judgment consistent with this opinion. Neither party will recover costs in this court.

CROW, C. J., MAIN, ELLIS, and GOSE, JJ., concur.