Argued at Pendleton May 6, affirmed June 11, rehearing denied July 2, 1929.

# GEORGE RED HAWK *v.* VESTAL JOINES.

(278 Pac. 572.)

622

For appellant there was a brief over the names of *Mr. Edward J. Clark* and *Mr. Archie C. McIntyre,* with an oral argument by *Mr. Clark*

For respondent there was a brief over the names of *Mr. George R. Lewis* and *Mr. William M. Peterson,* with an oral argument by *Mr. Lewis.*

McBRIDE, J.—This cause, while it involves but a trifling amount in a financial sense, is important in other respects. As to the authority of the state court to take jurisdiction of the controversy, and

the efficacy of state legislation to protect Indian allottees, or their white lessees, from trespasses of the character shown here, we fully agree with the court below, whose careful and painstaking opinion so fully covers the subject discussed that we give it in its entirety, premising, however, if the Umatilla Herd Law were in fact ineffective within the limits of the reservation, the fact that plaintiff brought this action in the state court would not estop him from coming into the state court for relief. But the opinion, which we here quote, so effectually disposes of the question of jurisdiction, that we have no doubts concerning the question of both legislative and judicial jurisdiction.

The opinion of the Circuit Court is as follows:

"This case was tried by the court without the intervention of a jury, submitted and decided by the court, in favor of the defendant. However, the attorneys have requested the court to render a written opinion, at the court's convenience, setting forth specifically its views upon the questions of law.

"This was an action of replevin brought by George Red Hawk, stipulated to be a full blooded Indian, who was an allottee on the Umatilla Indian Reservation, and who had not yet received final patent to any lands from the United States.

"In the complaint, he alleged he was entitled to the possession of the cattle, and in charge thereof by virtue of the special ownership therein. He deposited a statutory bond, agreeing to return the cattle to the defendant in the event a return thereof was adjudged, and to pay any sum the defendant might recover from the plaintiff in the action. Inferentially, the record disclosed that the property had been in his possession prior to the taking up by

Joines, but there was no proof of ownership of the cattle by Red Hawk, either general or special. There was no proof that the United States had any interest or ownership in the cattle, or right of possession thereof, either as guardian of the Indian, or otherwise. Joines alleged and proved that the cattle were taken up by him under conditions giving him the advantage of, and with the intent to take advantage of, Chapter 413, General Laws of Oregon, for 1921, on land which was lawfully in his possession. The proof showed that this land was in part upon the Umatilla Indian Reservation and consisted of two Indian allotments, duly leased to Joines by the United States through the superintendent of the Umatilla Indian Reservation. Joines demanded a return of the cattle, or in default thereof, a judgment for his special interest by virtue of the terms of the statute. The court held for defendant.

■ "The question of whether the statutory notice was given by Joines was of no importance. His intention to take up the cattle under the Umatilla Herd Law is clear. Red Hawk who had been in possession was actually notified, and the cattle retaken from Joines by replevin prior to the time when the statutory notice could have been required. No unreasonable delay on the part of Joines is shown. Besides, Red Hawk had negotiated for the return of the cattle, through his agent, offering to pay the money demanded. If Joines actually acquired a lien by virtue of the statute, this lien was not divested, by the failure to give the statutory notice in writing, prior to the time the cattle were taken by replevin, in view of these circumstances and the fact that Red Hawk had actual notice. There was testimony of

a written notice, but it was not clear enough for the court to adjudge the statutory notice was given. The court held that the right of possession was in Joines, by virtue of his taking up the cattle, under the terms of the statute and appraised his special interest, in view of the damages and expenses proven by the testimony. The chief point urged by plaintiff is that the court had no jurisdiction of the action, and particularly no jurisdiction to award a return of the cattle to the defendant. This claim is based upon three grounds, to wit:

"(a) The court did not have jurisdiction of Red Hawk because he is a full blooded Indian, has never received certificate of competency or final patent to his lands, although an allottee of the Umatilla Indian Reservation.

"(b) That the property of the Indian is not subject to the jurisdiction of the court.

"(c) That the alleged trespass occurred on the Umatilla Indian Reservation over which the court has no jurisdiction.

"These questions were considered separately, although the same principles enter into the determination of each.

"Jurisdiction of the Court Over the Indian.

"Red Hawk contends that since he is an Indian the court has no jurisdiction over him. His position is anomalous because he has come as a suitor, asking the court to adjudge to him the right of possession of these cattle. He availed himself of the power of the court and retook possession, and filed an undertaking voluntarily binding himself to return the property and to pay damages, but he contends that though the court can award possession to him,

it cannot find in favor of the defendant. This anomaly was called to the attention of the attorney for plaintiff upon his motion made after he closed his testimony. At that time plaintiff still insisted upon his right to have the power of the court exercised in his favor, although strenuously contended against its being exercised against him. Where the Indian has sought the forum of this court and asked for relief, without regard to his race, upon a matter without the exclusive control of the United States, it would seem that the court had the right to find the right of possession was in the defendant in the same transaction and to award the statutory judgment against the Indian. Red Hawk is a citizen of the United States and of this state if not by virtue of the allotment in trust, at least by virtue of the statute passed prior to the germination of this controversy. (Act June 2d, 1924, Chap. 233, 43 Stat. 253.) As a citizen he could come as a suitor in the courts of the State of Oregon and relief could be awarded either for or against him: *Stevenson* v. *Christie*, 64 Ark. 72 (42 S. W. 418); *Rubideaux* v. *Vallie*, 12 Kan. 28; *Daugherty* v. *Bogy,* 3 Ind. Ter. 197 (53 S. W. 542); *Stacy* v. *La Belle,* 99 Wis. 520 (75 N. W. 60, 67 Am. St. Rep. 879, 41 L. R. A. 419); *Bates* v. *Printup,* 31 Misc. Rep. 17 (64 N. Y. Supp. 561); *Bem-Way-Bin-Ness* v. *Eshelby,* 87 Minn. 108 (91 N. W. 291); *Deragon* v. *Sero,* 137 Wis. 276 (118 N. W. 839, 20 L. R. A. (N. S.) 842); *Smith* v. *Mosgrove,* 51 Or. 495 (94 Pac. 970); *Gho* v. *Julles,* 1 Wash. Ter. 325; *Brown* v. *Anderson,* 61 Okl. 136 (160 Pac. 724); *Rider* v. *LaClair,* 77 Wash. 488 (138 Pac. 3).

"These authorities leave no doubt that an Indian may sue and be sued in the state courts in any

matter over which Congress has not expressly retained jurisdiction in the United States. Especially is this true where the Indian is a citizen. An Indian who has received an allotment and patent for land is no longer a ward of the government, except as to the particular property still held in trust, but a citizen of the United States and of the state within which he resides, and not within the right of Indian regulations on the part of Congress, and this emancipation from Federal control cannot be set aside without the consent of the Indians and the states, nor is it affected by the provisions of the act subjecting the land allotted to conditions against alienation and guaranteeing him an interest in the tribal property: *In re Heff*, 197 U. S. 488 (49 L. Ed. 848, 25 Sup. Ct. Rep. 506); *State ex rel. Tompton* v. *Denoyer*, 6 N. D. 586 (72 N. W. 1014); *State ex rel. Crawford* v. *Norris*, 37 Neb. 299 (55 N. W. 1086); *Wa-La-Note-Tke-Tynin* v. *Carter*, 6 Idaho, 85 (53 Pac. 106); *In re Now-Ge-Zhuck*, 69 Kan. 410 (76 Pac. 877); *United States* v. *Rickert*, 106 Fed. 1; *Farrell* v. *United States*, 110 Fed. 942 (49 C. C. A. 183); *Boyd* v. *Thayer*, 143 U. S. 135 (36 L. Ed. 103, 12 Sup. Ct. Rep. 375).

"It has been repeatedly held that by virtue of the act of Congress, Indians who had severed their tribal relations, and take allotments are citizens, and entitled to institute or defend actions of ejectment or trespass in state or federal courts, regardless of the prohibition against alienation of the lands obtained under the allotment. It should be carefully noted that the distinction which runs through the decisions as to Indians completely under the control of the United States and those who have a right to use the state courts is based upon the division between those

who have severed their tribal relations and became citizens of the United States and those who have not. This distinction is of no validity at the present time in view of the act hereinabove cited, since tribal relations are thereby declared abolished and citizenship conferred in its place.

"The Supreme Court of this state has announced this proposition with regard to an allottee on the Umatilla Indian Reservation in a case of trespass on real property, where the Indian was plaintiff. The court says:

" 'It does not follow, however, that an Indian allottee may not invoke the aid of a state court for protection or enforcement of his personal or property rights when invaded by a white person. The constitution of this state declares that "every man shall have a remedy by due course of law for injury done him in person, property or reputation." (Article I, § 10), and it certainly would be a violation of both the letter and spirit of this constitutional provision for a state court to refuse its aid, when invoked to protect the rights of a suitor, on the sole ground that the party seeking its aid was an Indian. And such is not the law. There are numerous cases to be found in the books in which Indians have prosecuted actions and suits in the state courts.' *Smith* v. *Mosgrove,* 51 Or. 495, 496 (94 Pac. 970, 971).

"In the case of *Mosgrove* v. *Harper,* 33 Or. 252 (54 Pac. 187), an injunction issued at the instance of the white lessee as against the Indian lessors, and the superintendent of the Umatilla Indian Reservation enjoining them from interfering with the possession of the lessee of lands upon that reservation. It would seem there is no doubt under these decisions Red Hawk had a right to bring action for the recovery of the cattle, and the power of the court accorded

him this remedy and gave him the cattle upon the deposit of the undertaking until the matter could be tried. As a suitor, he has received protection. He submitted the issue of possession to the court and the court found against him. Now from the decisions the court had the power. The court necessarily had the authority to pass on the question of the right of possession submitted to it by the Indian and if it found he was not entitled to possession it was also entitled to adjudge the right of possession to defendant. It logically follows that if it so found it would have the right to enter the statutory findings and judgment against the Indians.

"Jurisdiction Over Personal Property.

"Red Hawk claims the court has no jurisdiction over personal property. It is true that claim and delivery is an action *quasi in rem,* but the actual basis of the action is not the right of property but the right of possession. Inferentially, from the record it appears Red Hawk was in possession of these cattle prior to the seizure by Joines. It must be presumed as against Joines, he was rightfully in possession. As against the third party who does not claim through the owner, possession is sufficient: *Casto* v. *Murray,* 47 Or. 57 (81 Pac. 388, 883). Red Hawk who possessed the right to sue or be sued submitted this question to the court, and likewise by voluntary contract, submitted the *res* to the jurisdiction of the court by the deposit of the undertaking. The court in the determination of the issue must decide whether he was entitled to possession and if so award it to him. In the event he was not entitled to possession, it must be awarded to Joines with the alternative money judgment.

■ "Red Hawk alleged he had a special property in the cattle. He did not prove this, and made no effort to do so, and the only way in which the court could draw an inference of any property in the cattle was the presence of his brands on some of them, and the loose use of the word 'his' by defendant's witnesses. The allegation of the complaint was denied and the court finds no basis in the record for a finding of any property in the cattle in Red Hawk. Therefore, the only issue was the right of possession. For all the court knows from the record these cattle may have been given to Red Hawk to herd by white persons. If that were true, his status as an Indian could not, in any manner affect the question of property.

"Even if he were the owner, it was not shown that the United States had any interest therein in any capacity either as holder of the title in trust for the Indian or in any other way. If the cattle belonged to the Indian, he had a right to sell them and to contract with reference to them.

"In *United States* v. *Paine Lumber Co.*, 206 U. S. 467 (51 L. Ed. 1139, 27 Sup. Ct. Rep. 697), it is held that, notwithstanding the restraint, on alienation placed by the trust patent on an allotment, the Indian allottee had a right to sell timber growing on the land, and that the government could not recover in trover from the purchaser. Likewise it is held that an Indian allottee has the right to make a valid mortgage upon a crop growing upon lands still held under restriction as to alienation: *McClain* v. *Miller*, 95 Kan. 794 (149 Pac. 399). In *Rider* v. *LaClair*, 77 Wash. 488 (138 Pac. 3), decided by the Supreme Court of Washington, the foreclosure of a chattel mortgage on personal property belonging to an Indian who was an allottee upon the Yakima Indian Reservation, and

who had not severed his tribal relations was upheld and a very careful distinction was drawn by Justice CHADWICK, a pioneer, who had in mind the conditions of Indians and Indian Reservations between personal property in which the United States was proven to have title in trust for an Indian, and property purchased with the proceeds of the sale of the allotment of the incompetent Indian on the one hand and the personal property of the Indian over which it was not proven that the government had any interest on the other. As to the first class, foreclosure was denied, but as to the second class it was allowed. It would seem that the policy of the government does not extend to the control of the personal property acquired by the Indian, especially where its genesis is not shown to have been in a fund over which the United States was trustee.

■ "The foregoing analysis is somewhat beside the point, however, as there was no showing in the evidence of property in the Indian nor in the United States. If it had been desired to make this an issue proper proof should have been adduced. There is no presumption that Red Hawk was the owner arising merely from the proven fact of possession. The right to the possession was the issue submitted to the court by virtue of the filing of the action and the deposit of the undertaking.

"Jurisdiction of the Court Over the Umatilla Indian Reservation.

■ "The last suggestion of plaintiff is that the state court had no jurisdiction of the Umatilla Indian Reservation. The *locus in quo,* the animals were taken up, and that the statute under which the defendant claims did not govern there.

"In the consideration of this problem, the decisions relating to crimes of Indians, and upon Indian Reservations, and construing the words, 'Indian country' with reference to crimes, was not applicable, since that field is more or less covered by federal legislation, and there is no question but when Congress has acted, its power is supreme. Likewise, decisions relating to allotments and descent thereof, determination of which question has been finally allocated by Congress to the Department of the Interior, are not considered. It may be noted that before Congress acted in this particular, such problems were justifiable in the state courts. See *McBean* v. *McBean,* 37 Or. 195 (61 Pac. 418).

"In this case, no statute has been referred to relating to trespass upon lands of the Umatilla Indian Reservation. There is apparently no statute giving the white lessee any protection against trespass upon lands which he has leased from the Indian by the authority of the United States.

"It must be assumed the tribal courts and the tribal law, if such exists, do not maintain *fora* for the protection of the white suitor. The Indian cannot sue in the federal courts on the ground of diversity of citizenship. *Felix* v. *Patrick,* 145 U. S. 317 (36 L. Ed. 719, 12 Sup. Ct. Rep. 862) ; *Smith* v. *Mosgrove,* 51 Or. 495, 500 (94 Pac. 970). Conversely the white man cannot sue the Indian in the federal courts upon that basis. Under federal statutes, which have been called to the court's attention trespass upon an allotment in possession of a white lessee is not a federal question. It is, therefore, clear that if a white lessee has any protection against trespass, he must receive it by virtue of the laws of the State or Oregon, or not at all.

■ "It is a familiar principle that where Congress has the right to take over exclusive jurisdiction, and has not covered the particular subject under consideration, the power of the state courts is upheld until Congress acts. See *Sioux Remedy Co.* v. *Cope,* 235 U. S. 197 (59, L. Ed. 193, 35 Sup. Ct. Rep. 57); *Territory of New Mexico ex rel. E. J. McLean & Co.* v. *Denver etc. R. Co.,* 203 U. S. 38 (51 L. Ed. 78, 27 Sup. Ct. Rep. 1); *Sligh* v. *Kirkwood,* 237 U. S. 52 (59 L. Ed. 835, 35 Sup. Ct. Rep. 501).

■ "It does not follow because the authority of the federal government over the Indians and the Indian country is supreme that the state and territorial government have no jurisdiction whatever over them, and over Indian Reservations. In the absence of provisions to the contrary the lands embraced therein occupied by Indian tribes are a part of the state territory, and subject to its jurisdiction except so far as concern the government and protection of the Indians themselves, and for purposes relating to treaties and agreements between the United States and Indians, in which respects the jurisdiction of the United States is exclusive: *Wagoner* v. *Evans,* 170 U. S. 588 (42 L. Ed. 1154, 18 Sup. Ct. Rep. 730); *Thomas* v. *Gay,* 169 U. S. 264 (42 L. Ed. 740, 18 Sup. Ct. Rep. 340); *Draper* v. *United States,* 164 U. S. 240 (41 L. Ed. 419, 17 Sup. Ct. Rep. 107), *Utah & Northern Ry. Co.* v. *Fisher,* 116 U. S. 28 (29 L. Ed. 542, 6 Sup. Ct. Rep. 246).

■ "Plaintiff contends that the state ceded jurisdiction over the Indian reservation to the United States by virtue of Section 1 of the Act of Congress, August 14th, 1848, 9 Stat. 323, organizing the terri-

tory of Oregon.  That act contains the following language:

" 'Nothing in this act contained shall be construed to impair the rights of person or property now pertaining to the Indians in said territory, so long as such rights shall remain unextinguished by treaty between the United States and such Indians, or to affect the authority of the government of the United States to make any regulation respecting such Indians, their lands, property, or other rights, by treaty, law or otherwise, which it would have been competent to the government to make if this act had never passed.'

"However, it will be noted that this declaration is simply in conformance with the general law and is not a specific reservation of all jurisdiction in the United States over such lands as may be embraced in the Indian reservation.  Likewise it will be noted that the act admitting the state to the Union, and the act accepting the propositions made by Congress contained no such reservation of jurisdiction.  Jurisdiction has always been assumed by the state court over the Umatilla Indian Reservation, and in private controversies thereon when not in conflict with the exclusive jurisdiction of the United States upon criminal matters, and the trust property.  Process has always been had upon the reservation upon claims arising between citizens of the state and Indians, even where possession or right of possession of the allotment was involved.  At the present time, great areas of the reservation lands are patented to whites or to fully emancipated Indians, and Indians not fully emancipated do not usually farm lands themselves, but such real property is in the possession of white lessees by contract with the Indian, under the authority of the

government of the United States, as Joines was, of the lands in question.

"Under such circumstances since Congress has not declared these matters within the exclusive jurisdiction of the United States courts or the Department of the Interior, it must be held that the white lessees are under the aegis of the municipal law of the state of Oregon.

"In *Deragon* v. *Sero,* 137 Wis. 276 (118 N. W. 839, 20 L. R. A. (N. S.) 842), it is said:

" 'The laws of the state for the peace and good order of the people within its boundaries extend over Indian reservations, and apply to the infraction of such laws whether by persons of Indian blood or otherwise. * * That does not conflict with the police duties of federal officers on reservations, rendering them liable to be prosecuted in state courts for acts lawfully done in the discharge of their duties.'

"In accord with this general principle the Supreme Court of Oregon, speaking through Mr. Justice BEAN, announced the decision of *Mosgrove* v. *Harper,* 33 Or. 252 (54 Pac. 187), wherein it affirmed the decision of Hon. S. A. LOWELL, Circuit Judge of this district, who had decided that the municipal law of Oregon governed the cancellation of a lease, made by Indian wards, upon the Umatilla Indian Reservation, with the approval of the United States, and that the Secretary of the Interior had no power to order cancellation. The court says:

" 'By such a contract the lessee secures a vested interest, of which he can no more be deprived by the order of the Secretary of the Interior than he can be deprived by such order of any other property lawfully acquired. If the lease is secured through fraud or imposition, the courts of the country are open to the injured party. * * That is a matter which belongs to

the judicial, and not the executive department of the government. The right of the lessor, when denied to re-enter and take possession of the leased premises under and by virtue of the several provisions of the lease, can only be tried out in a court of law, and not by some executive department of the government.'

"If this be sound law then the lessee has a vested interest which he can protect in the state courts, also against trespass, even if the trespass was committed under the order of the Interior Department, and neither the United States nor the Indian can complain. If there were no remedy, the department could by executive order allow the Indian cattle to pasture on the crops grown on the land by the white lessee with impunity. The mere fact that the trespass has been done with executive authority should not protect the trespasser.

■ "But it is contended that in no event does the municipal law of trespass of the state extend over the reservation. Reliance is placed upon the case of *Peano* v. *Brennan,* 20 S. D. 342 (106 N. W. 409), but in that case no white lessee was involved, the Indians had not received allotments. The plaintiff had attempted to appropriate unallotted land to himself. The agent acting under federal regulations, and according to law, entered the land and tore down his fences. It was held the Indian plaintiff had no remedy. The distinction between the cases is obvious. However that may be, this court is bound by superior authority. The Supreme Court of Oregon has held that an allottee of the Umatilla Indian Reservation may have relief granted by the statutes and common law against trespasses by the white man: *Smith* v. *Mosgrove, supra.* It lays down the rule that a question of trespass under the municipal law does **not**

involve the question of title, over which, of course, state courts have no jurisdiction, when the rights to land on the Umatilla Indian Reservation are involved. 'The state courts have never been given jurisdiction concerning titles to Indian allotments while the same are held in trust by the United States.' 'The action of trespass does not necessarily involve a question of title (*Newcombe* v. *Irwin,* 55 Mich. 620 (22 N. W. 66), and a trial thereof will not interfere with any of the rights given to the Secretary of the Interior or the federal courts over the Indian or his land.'

"No escape can be had from this decision. An Indian allottee of the Umatilla Indian Reservation had a right to protect his allottee's real property from invasion by trespass and had a right to protect it in the state courts and to have the state law applied. The court is bound to conclude the white lessee under authority of the government has a similar right, even against the Indians, or the United States itself. See *Mosgrove* v. *Harper, supra.* If the trespasser were a white man the question is settled by these opinions, beyond a shadow of a doubt, and which authority this court is bound to recognize. The court has already disposed of the contentions tending to differentiate the cases of the Indian and a white trespasser.

■ "The statute under which defendant claims extends to the whole of Umatilla County excepting the national forest, and some other lands. It makes no exception of the Umatilla Indian Reservation; no specific reservation having been made, it cannot be presumed another is to be implied, relating to other real property more or less in control of the United States.

■ "Under this statute two remedies are accorded. It has already been determined that as to recovery of

damages, defendant was entitled to the benefit of this act as well as of the general laws governing trespass on realty. But once it be conceded that the law of Oregon extended for the protection of the lessee against trespass he is also entitled to exercise such summary remedies as are accorded to him by the legislature. He did so and he is therefore entitled to prevail against the trespasser who violated the statute. The policy of the statute is to require all stock not under charge of a herder to be kept under control by efficient fences in Umatilla County. A few stock running loose can nullify the law and require fences to be maintained through the whole county. The court holds that the statute cannot be nullified by either the government or the Indian. Public policy as enacted by the people demands that stock be controlled in the limits of this county."

■ Objections are raised here, apparently for the first time, as to the constitutionality of the Umatilla County Herd Law, but the plaintiff is in no position to raise them. He has not alleged ownership of the property or general right of possession. The allegation in that respect is as follows:

"That at all the times hereinafter mentioned, plaintiff was, and now is, by virtue of a special property entitled to the possession of the following described personal property, to-wit: (Describing it). * *

"That the said defendant on or about the 16th day of Nov. 1926, in the county of Umatilla, state of Oregon, without the plaintiff's consent and wrongfully came into possession of said personal property, and still retains possession of same."

Then follow allegations for demand for possession, refusal to deliver, and continued wrongful withhold-

ing. There was a general demurrer, which was overruled.

■ We are of the opinion that the complaint does not state facts sufficient to constitute a cause of action in replevin or "claim and delivery" as it is termed in the statute.

The allegation, that plaintiff is entitled to possession by virtue of a special property therein, states a mere conclusion of law. Where a special property in the chattels is alleged, the nature of that special property should be stated so that the court can see that it is such as gives the plaintiff a right of possession.

A similar case, under a like statute, is *Curtis & Co.* v. *Cutler,* 7 Neb. 315, 317, where it is said:

"The original petition does not state one essential fact which is requisite to constitute a cause of action in replevin. The general averments in the amended petition of the defendant in error, that: 'he has a special property in the goods and chattels (describing them), and that he is entitled to the immediate possession thereof, and that they are wrongfully and unjustly detained from him,' are mere propositions of law; and it seems clear that the facts pleaded do not support these averments."

The allegations in the complaint in that case were almost identical with those in the case at bar.

We find no decision of this court upon the point presented here in *Mayes* v. *Stephens,* 38 Or. 512 (63 Pac. 760, 64 Pac. 319). It was held that, where a complaint alleged that plaintiff was the owner of the property and entitled to its possession, evidence that plaintiff was a chattel mortgagee of the property and held it in his possession until the debt secured by it was paid, he was entitled to show this under a general

allegation of ownership, that case following *Reinstein* v. *Roberts,* 34 Or. 87 (55 Pac. 90, 75 Am. St. Rep. 564). The reason for this is clear. The allegation that one is the "owner" of property means that he has dominion over it and is sufficiently comprehensive to include any kind of rightful possession. It does not express a conclusion of law, but comprehensively states a fact, and, as the greater includes the less, it may include every right of possession or dominion over property. It will be noticed that the complaint avoids any use of the word "owner" or "ownership," but attempts to substitute the phrase "a special property therein" which in itself would mean almost any interest however remote, or even fanciful. "Ownership," standing alone and unqualified, imports a right of possession. "Special property" in a chattel has no such connotation. "Right of possession," in the absence of other allegations of fact supporting it, states merely a legal conclusion.

The complaint does not state facts sufficient to constitute a cause of action.

The judgment is affirmed.

AFFIRMED. REHEARING DENIED.

BEAN, RAND and ROSSMAN, JJ., concur.