## PEANO v. BRENNAN.

The Supreme Court will take judicial notice that by treaty stipulations certain territory within the state has been set apart as a reservation for Indians, and that the reservation has not been subdivided or allotted to the Indians in severalty, but that it belongs to them as a tribe.

Under the provisions of the act admitting the state into the Union that the state should disclaim the right and title to lands within the state held by any Indian tribes, and that until the title shall have been extinguished by the United States the same shall remain subject to the jurisdiction and control of Congress, and Const. art. 22, by which the state on its part entered into the required compact with the United States, the state courts are precluded from exercising jurisdiction in actions involving the possession or right to possession of Indian reservation lands, such as an action of trespass brought by a tribal Indian against an Indian agent to recover damages for the latter's act in destroying fences erected by the former on land within the reservation.

(Opinion filed, February 7, 1906.)

Appeal from Circuit Court, Fall River County. Hon. Levi McGee, Judge.

Action by William Peano against John R. Brennan. From an order sustaining a demurrer to the complaint, plaintiff appeals. Affirmed.

Thos. L. Redlon and D. B. Jenckes, for appellant.

The land upon which the trespass is alleged to have been committed lies within the Sioux Reservation in South Dakota; as the land is within the state the Indian is entitled to protection under the state laws. Sec. 26 Civiy Code, S. D. 1903. Sec. 1, Art. 6, Constitution S. D., Chap. 1, Political Code, Sec. 1. Civil Jurisdiction of the state has not been ceded or reserved to the United States. State courts have equal jurisdiction with the federal. Langford v. Monteith, 102 U. S. 145; Utah Northern R. R. v. Fisher, 116 U. S. 28. By his demurrer defendant admits all of the allegations of the complaint to be true, and in the eighth paragraph of the complaint it is charged that the defendant, unlawfully and without any right so to do, ordered the trespass, which, being admitted by the demurrer, constitutes a cause of action. He is not sued as an officer, and the court is not ousted of jurisdiction because he asserts he is an officer and has authority, but he must allege and prove it. Foster's Fed. Prac., page 73. Cunningham v. Macon & Brunswick R. R. Co., 109 U. S. 446-452; Mitchell v. Harmony, 13 How. 115; Bates v. Clark, 95 U. S. 204; Meigs v. McClung, 9 Crauch 11; Wilcox v. Jackson, 13 Pet. 498; Grisar v. McDowell, 6 Wall. 363; United States v. Lee, 106 U. S. 196; Virginia Coupon Cases, 114 U. S. 269.

*Buell & Gardner,* for respondents.

The circuit court of Fall River county is without jurisdiction to try an action involving a trespass to real property situate within the Pine Ridge Indian Reservation. Sec. 101, Organic Act. Organizing the Territory of Dakota, being Act of March 2, 1861; Art. 22, Constitution of South Dakota; United States v. Ewing, 47 Fed. 809; Holderman v. Pond, 45 Kas. 410; Brasco v. South Kansas Railway Company, 40 Fed. 273; Harkness v. Hyde, 98 U. S. 476. The authority of the federal government over the Indians and Indian country is supreme and exclusive. U. S. Revised Statutes, Sec. 2058; U. S. v. Mullin, 71 Fed. 682. A public officer intrusted, by law, with the exercise of judgment and discretion is liable to a person injured as the result of his acts only when such acts are prompted by malice or corruption. Black v. Linn et al., 17 S. D. 335; U. S. v. Mullin, 71 Fed. 682.

CORSON, J. This is an appeal from an order of the circuit court of Fall River county sustaining a demurrer to the plaintiff's complaint. The action was brought in that court by the plaintiff, a tribal Sioux Indian, against the defendant, an Indian agent for the Pine Ridge Indian Reservation. It is alleged in the complaint that the plaintiff with his family, aout five years prior to the commencement of the action, located permanently on uninhabited land in Washington county for the purpose of establishing a permanent home and following agricultural pursuits; that said land so located upon is suitable for agricultural purposes and contains about 140 acres and is situated within the Pine Ridge Indian Reservation; that in conjunction with other Indians belonging to the same tribe the plaintiff constructed an irrigating ditch for the purpose of irrigating the said land; that when said plaintiff located on said land there was a wagon track down said valley running through the same, and that when he fenced said land he put gates in said fences on each side at the points where the wagon track crossed the same; that in July, 1902, plaintiff had growing within the inclosure on his said land five acres of corn, about an acre of vegetables, and about eight acres of hay; that at the time there were large herds of horses and cattle running freely in the neighborhood of the premises so occupied and being cultivated by the plaintiff, which was well known to the defendant; that the Indian police and farmers of said agency were all under the orders of the defendant, and that the defendant aforesaid unlawfully and without any right so to do ordered said Indian police to cut, destroy, and open up the fences of the plaintiff which surrounded and protected his land from the roaming herds of stock; that under said unlawful orders and directions of the defendant said Indian police did on or about the 23d day of July, 1902, cut, tear down, and destroy and open up the said fences and thereby exposed all the plaintiff's hay and crops to the ravages of the said roaming herds of stock; that said herds of stock immediately entered upon said inclosure and destroyed plaintiff's crops to his damage in the sum of $1,675.00; and that plaintiff was powerless to prevent said damage—wherefore the plaintiff demands judgment for the amount above stated. To this complaint a demurrer was interposed as follows: "Now comes the defendant,

John R. Brennan, and demurs to the complaint of the plaintiff here-. in, upon the ground and for the reason that it appears upon the face of said complaint: (1) That the court has no jurisdiction of the person of the defendant or the subject of this action; (2) that the plaintiff has not legal capacity to sue; (3) that several causes of action have been improperly united; (4) that said complaint does not state facts sufficient to constitute a cause of action. Wherefore, for all the reasons aforesaid, the defendant asks that said complaint be dismissed upon its merits and for defendant's costs herein." On the 19th day of February, 1904, the court made an order sustaining the said demurrer, to the making of which order plaintiff duly excepted, and the ruling of the court in sustaining the demurrer is now assigned as error.

It will be seen from the allegations of the complaint that the plaintiff is a member of the tribe of Sioux Indians inhabiting the country known as the Pine Ridge Indian Reservation; that he inclosed certain portions of said reservation, and that in so doing he closed up a wagon road passing through the same; that the Indian police of said Pine Ridge Indian Reservation, by order of the Indian agent at said agency, removed the said fences; and that by reason thereof his growing crops were destroyed by the herds of cattle roaming in that vicinity.

In support of the ruling of the court in sustaining said demurrer the respondent contends: (1) That the circuit court of Fall River county is without jurisdiction to try an action involving a trespass to real property situated within the Pine Ridge Indian Reservation; (2) that the authority of the federal government over the Indians and Indian country is supreme and exclusive; (3) that, conceding jurisdiction, the complaint does not state facts sufficient to constitute a cause of action; (4) that a public officer intrusted by law with the exercise of judgment and discretion is liable to a person injured as the result of his acts only when such acts are prompted by malice or corruption, and hence, there being no allegation in the complaint that the acts of the Indian agent in directing the Indian police to remove the plaintiff's fences were made through malice or corruption, the complaint is insufficient. The appellant controverts these propositions and contends that the circuit court

did have jurisdiction to try and determine the action, and that, under the facts stated in the complaint, the plaintiff was entitled to recover from the defendant damages sustained by him.

This court will take judicial notice that by treaty stipulations. the territory embraced in what is known as the Pine Ridge Reservation has been set apart as a reservation for a portion of the Sioux. Indians, and that said reservation has not been subdivided or allotted to the Indians in severalty, but that it belongs to the Indians. as a tribe. By the laws of the United States the Indians occupy such lands by its permission, and the tribal Indians are regarded as wards of the nation and are under the protection of the federal. government, for which the Indian agent acts in an official capacity. By the act of admission of the state of South Dakota, known as the "Omnibus Bill," it was provided, among other things, that the people inhabiting the said proposed state should agree and declare that. they forever disclaimed the right and title to the unappropriated. public lands lying within the boundaries thereof and to all lands lying within said limits owned or held by any Indian or Indian tribes,. and that until the title shall have been extinguished by the United. States the same shall be and remain subject to the disposition of the United States, and that said Indian lands shall so remain under the absolute jurisdiction and control of the Congress of the United. States. In pursuance of this requirement of the federal government, the state, by article 22, of the state Constitution, entered into. such a compact with the United States. The territory therefore embraced within the Pine Ridge Reservation remains under the jurisdiction of the United States, and the Indians are permitted to occupy the same upon such terms and conditions as may be imposed by the United States government through Congress and the proper executive officers:

While the Indian territory is included within the exterior boundaries of the state of South Dakota, the jurisdiction over such territory is, by the compact referred to, retained by the national government, and the state courts, in our opinion, are precluded from exercising jurisdiction in actions involving the possesssion or the right of possession to any of the Indian reservation lands. It is quite clear that, under the provisions of the omnibus bill requiring

the compact entered into by the state, it was the intention of the federal government to retain exclusive control over the Indians while remaining members of their tribes and the management and disposition of the reservation lands. The object of the constitutional provision was not merely to declare that the state disclaimed all title to the Indian lands, but that it disclaimed all rights to interfere by its legislation or courts in the management or control of the Indians or in the management or control of the Indian reservation lands. And this seems to have been the view taken of the provisions of the ombnibus bill, and the constitutional provisions adopted in pursuance thereof, by Judge Shiras, in United States v. Ewing, decided in the District Court of South Dakota in 1891 and reported in 47 Fed. 809. In his opinion that learned judge, after commenting at some length upon the decisions of the United States courts, concludes as follows: "To fulfill the duty thus undertaken, it is clear that the United States must possess the absolute control over the lands included within the reservation, and also the right to enact all the laws needed for the protection of the persons and property of the Indians on the same. The reservations and provisions found in the act creating the territory of Dakota and the state of South Dakota, whereby there is reserved to the United States the absolute jurisdiction and control over the Indian lands, were unquestionably included therein for the purpose of preventing any question arising as to the continued power and control of the United States over the Indian country; such continued power and control being necessary to enable the United States to discharge its treaty obligations and duties to the Indians. It is argued by counsel that the reservation of absolute jurisdiction and control over the Indian lands contained in the omnibus act is to be confined to the mere matter of the ownership of the title and control of the right of taxation, but such limited construction is not admissible. The reservation was meant to be as broad as the duty which the United States assumed in regard to these lands, which was to secure to the Indians the peaceful possession thereof as their home, and to protect their persons and property thereon." Kansas Indians, 5 Wall. 737, 18 L. Ed. 667; Ex-parte Crow Dog, 109 U. S. 556 ,3 Sup. Ct. 396, 27 L. Ed. 1030.

In the case of Kansas Indians, supra, the Supreme Court of the United States, in discussing a similar question, says: "If the tribal organization of the Shawnees is preserved intact and recognized by the political department of the government as existing, then they are 'a people distinct from others,' capable of making treaties, separated from the jurisdiction of Kansas, and to be governed exclusively by the government of the Union. If under the control of Congress, from necessity, there can be no divided authority. If they have outlived many things, they have not outlived the protection afforded by the Constitution, treaties and laws of Congress. * * * There can be no question of state sovereignty in the case, as Kansas accepted her admission into the family of states on condition that the Indian rights should remain unimpaired, and the general government at liberty to make any regulation respecting them, their lands, property, or other rights which it would have been competent to make if Kansas had not been admitted into the Union. The treaty of 1854 left the Shawnee people a united tribe, with a declaration of their dependance on the national government for protection and the vindication of their rights. * * * As long as the United States recognize their national character, they are under the protection of treaties and the laws of Congress, and their property is withdrawn from the operation of state laws."

The duties and obligations of the federal government to the Pine Ridge Indians, its exclusive jurisdiction over that reservation, and the duties imposed upon the government by treaty stipulations and obligations are very analogous, if not identical, to those sustained by the government to the Kansas Indians at the time that that decision was made. The action, as we have seen in this case, was one that under the former system of pleading would have been denominated an action of trespass, and involves the right of the Indian agent and the Department of the Interior in the management and control of these lands. Clearly the state court has no jurisdiction of such an action. To take jurisdiction would enable such court to interfere in the managemnet and control of the Indian reservation, subjecting Indian agents to litigation in the state courts in matters pertaining to their duties in he management and control of the Indians on their reservation. To permit a state court to

take jurisdiction would, in our opinion, be in direct conflict with the provisions of the omnibus bill and the compact entered into on the part of the state.

Counsel for appellant relies largely upon the decision of the Circuit Court of Iowa in the case of Y-Ta-Tah-Wah v. Rebock, 105 Fed. 257; but we do not regard that decision as authority in the case at bar, for the reason that the action in that case was a transitory action and did not involve the management or control of the Indians on their reservation. It may be conceded that an Indian might maintain an action in a state court involving the possession or the right to possession or trespass upon lands entirely outside of the reservation, as was the case in Felix et al. v. Patrick et al. (C. C.) 36 Fed. 457, wherein it was held that a tribal Indian might maintain an action in the state court to recover possession of land in the city of Omaha, and which decision was affirmed by the Supreme Court of the United States in 145 U. S. 317; 12 Sup. Ct. 862, 36 L. Ed. 719. No such question, however, is involved in the case at bar, as the land in controversy in this case is within the reservation. These conclusions render it unnecessary to pass upon the other questions raised by the demurrer.

The order sustaining the demurrer is affirmed.