O'NEAL, Respondent, v. DIAMOND A CATTLE COMPANY, Appellant.

(260 N. W. 836.)

(File No. 7713. Opinion filed May 9, 1935.)

Martens & Goldsmith, of Pierre, for Appellant.

F. W. Lambert, of Fort Pierre, for Respondent.

CAMPBELL, J. Plaintiff instituted this action in the circuit court of Stanley county alleging in substance that he was the owner and lawfully in possession of certain real estate (describing the same by governmental subdivisions) in Armstrong county, S. D. (an unorganized county attached to Stanley county for judicial purposes), and that on October 27, 1932, he had certain hay cut and stacked on said land (being 40 tons of the value of $4 per ton) and there was growing upon said land certain grass and winter feed; that on said day defendant negligently and unlawfully permitted its cattle to trespass upon said land and to trample down, eat, and destroy the stacked hay (to plaintiff's damage $160) and to eat, injure, and destroy the growing grass and winter feed on said land (to plaintiff's damage $50). Upon these allegations, plaintiff asked damages in the sum of $210. Issue being joined, the case came on for trial before the court with jury and resulted in a general verdict in favor of plaintiff and against the defendant assessing plaintiff's damage in the sum of $115. From this judgment and from the denial of its application for new trial defendant has appealed.

During the course of the trial, the following facts were developed without contradiction: The premises upon which respondent claims appellant's cattle trespassed are within the unorganized county of Armstrong, but they are also entirely within the exterior boundary of the Cheyenne River Indian Reservation created out of the former Great Reservation of the Sioux Nation by the Act of Congress March 2, 1889 (chapter 405, 25 Stat. p. 888). Appellant was grazing a number of head of cattle on this portion of the Cheyenne River Reservation by virtue of a permit executed by the authority of the Secretary of the Interior of the United States, which permit obligated the permittee to exercise due precaution to prevent injury to the fenced premises or live stock of any Indians on the reservation and reimburse the Indians for any loss of any kind that might occur to their fenced premises or their live stock, and which further provided that any unfenced allotted land within the pasture tract might, at any time, be excluded for the use of an allottee or those claiming through him by fencing with a legal fence.

Respondent is a white man married to an Indian woman and is occupying and claiming right to possession of a tract of land

within the reservation bounded upon the south side by the Missouri River and upon the other three sides by a fence so constructed as to constitute a legal partition fence under the laws of this state (section 10533, Rev. Code 1919). It is for the breaking of this fence and trespass of appellant's cattle on this tract, destroying stacked hay and growing grass and winter feed, that respondent instituted this action for damages. The fenced tract includes within the single fence some seven or eight hundred acres of land embracing various parcels concerning which the evidence shows the following facts: The fence includes what is known as the "Charles Claymore place," which is a tract of about 111 acres owned by respondent's Indian wife under fee patent and occupied by respondent with her knowledge and by her consent and permission. The fence includes also what is known as the "Sylvester Garreau allotment." This is a trust patent allotment made to an Indian, Garreau, now deceased, which respondent claims to occupy by virtue of a verbal lease from one of the heirs of Sylvester Garreau, who in turn claimed to represent the other heirs. The fence includes about 120 acres of the Garreau allotment. The fence includes the greater portion of two tracts of land aggregating 160 acres alloted under trust patent to Clinton Charles O'Neal, a minor child of respondent by his Indian wife. The fence also includes the greater portion of two tracts aggregating approximately 160 acres which were allotted under trust patent to Burton L. O'Neal, another minor child of respondent by his Indian wife. As to the Burton L. O'Neal allotment, the facts are that the same was relinquished in May, 1932, and application was made for the allotment of other land in lieu thereof (entirely outside the fence in question), which application for change was approved by the Commissioner of Indian Affairs and the Department of the Interior and trust patent ordered to be issued for the lieu land in June, 1932, whereby the original Burton L. O'Neal allotment reverted to the status of unallotted tribal land. The fence also included some 250 acres of other unallotted tribal land. The stacked hay had been cut partly on the Charles Claymore place, partly on the Garreau allotment, partly on the Clinton Charles O'Neal allotment, partly on the Burton L. O'Neal relinquished allotment, and perhaps in part on unallotted tribal land, and the stacks were located on the Charles Claymore place and on the Clinton Charles O'Neal allotment.

[■] This is not a case of an Indian allottee attempting to protect his rights against a trespasser. Cf. Smith c. Mosgrove (1908) 51 Or. 495, 94 P. 970. Trust patent allottees are wards of the government and they cannot lease their allotments without the approval of the Secretary of the Interior, and there is no claim of any such lease or leases in this case which is sufficient to distinguish the situation from that involved in Bourcy v. Kaufman (1914) 33 S. D. 635, 146 N. W. 1074; and it is further distinguishable by the fact that appellant in this case is not a mere naked trespasser. The instant case is distinguishable also from the situation involved in Carlberg v. Fields (1914) 33 S. D. 410, 146 N. W. 560, by virtue of the fact that it did not appear in the Carlberg Case that the land was in truth within the limits of an Indian reservation. What the situation might be if respondent had instituted this action merely for trespass upon the 'Charles 'Claymore place, of which he was in peaceable possession, we need not undertake to decide. That tract being fee patent land would, doubtless, be subject to the jurisdiction of the state courts. The remainder of the fenced tract, however, is undoubtedly Indian land in Indian country. Appellant is not a mere naked trespasser, but is lawfully upon the reservation for the grazing of its cattle by the authority of the Secretary of the Interior subject to certain restrictions and conditions. Respondent, a white man, has voluntarily gone into the Indian country, fenced a tract of seven or eight hundred acres which is all Indian land excepting approximately 111 acres, and has instituted this action for trespass to the entire tract against a permittee lawfully upon the reservation. Certainly the case presents a controversy with reference to the right of possession of Indian lands in the Indian country. The taxpayers of this state do not maintain the courts of the state for the solution of such questions, and we do not think the state courts have jurisdiction thereof. Respondent should seek his remedy either through the Department of the Interior or the federal courts as his circumstances may require and the law may permit. Cf. Peano v. Brennan (1906) 20 S. D. 342, 106 N. W. 409; Laveirge v. Davis (1926) 166 Minn. 14, 206 N. W. 939 (certiorari denied in 273 U. S. 714, 47 S. Ct. 107, 71 L. Ed. 854).

[■ ■] Jurisdiction of subject-matter cannot arise, of course, from consent or submission of the parties. When the fact situa-

tion developed at the trial as above outlined, the court should have ordered a dismissal of its own motion.

The judgment appealed from is reversed and the cause remanded, with directions to dismiss.

All the judges concur, excepting POLLEY, J., absent and not participating.