1998 SD 112

Art RISSE, Bonnie Risse, and Juanita Page, Plaintiffs and Appellants,

v.

James MEEKS, Elsie Meeks, Amy Toczek, et al., Defendants and Appellees.

No. 20184.

Supreme Court of South Dakota.

Considered on Briefs April 29, 1998.

Reassigned Aug. 13, 1998.

Opinion Decided Nov. 10, 1998.

Ralph A. Kemnitz, Philip, for plaintiffs and appellants.

Charles Abourezk of Abourezk Law Offices, Rapid City, for defendants and appellees.

GILBERTSON, Justice (on reassignment).

[¶ 1.] Landowner sued cattle owners for trespass of cattle and punitive damages. Cattle owners' motion to dismiss was granted on the issue of punitive damages because the trial court held it did not have subject matter jurisdiction. We affirm.

### FACTS

[¶ 2.] Art Risse, Bonnie Risse, and Juanita Page (collectively referred to as Risses) are non-Indians residing on deeded land in Bennett County, South Dakota, outside of the

current exterior boundaries of the Pine Ridge Indian Reservation. They started the current action against James Meeks, Elsie Meeks, and Amy Toczek (collectively referred to as Meeks), who are members of the Oglala Sioux Tribe (Tribe) residing within the exterior boundaries of the Pine Ridge Indian Reservation in Jackson County.

[¶ 3.] Risses allege that on August 12, 1994, one hundred twenty-four head of cattle carrying the brands registered to Meeks entered onto Risses' property in Bennett County. The cattle allegedly entered Risses' property from land leased by Meeks from the Tribe. The land from which the cattle entered Risses' property is trust land held for the benefit of Tribe by the United States of America and is located within Bennett County, but outside the current exterior boundaries of the Pine Ridge Indian Reservation.[1]

[¶ 4.] Following the alleged trespass, Risses gathered and retained the cattle pursuant to SDCL ch 40–28 and provided notice of trespass and probable damage caused by the cattle. The cattle were reclaimed by Meeks through posting of a bond as required by SDCL 40–28–9.

[¶ 5.] Risses filed suit with the state circuit court in Jackson County, South Dakota. The first count of the complaint alleged a trespass and sought compensatory damages for the cattle crossing onto Risses' land. The second count of the complaint sought punitive damages and claimed willful, wanton, and reckless conduct by Meeks, alleging they failed to install a fence around their property.

[¶ 6.] Meeks acknowledged the court's jurisdiction as to count one of the complaint, but moved to dismiss the second count for lack of subject matter jurisdiction. Meeks argued that they were Indians and the predicate act or omission for punitive damages occurred in Indian Country[2] and, as such, this claim was only cognizable in tribal court.

[¶ 7.] On October 17, 1996, the trial court filed an order dismissing the second count of the complaint relating to punitive damages on the basis that the trial court lacked subject matter jurisdiction. The trial court held that subject matter jurisdiction over the punitive damages claim would lie in tribal court.

[¶ 8.] Risses appeal.

## ISSUE

[¶ 9.] **Whether the trial court erred in determining that it did not have subject matter jurisdiction over the punitive damages claim set forth in count two of Risses' complaint.**

## STANDARD OF REVIEW

[¶ 10.] "Our standard of review of a trial court's grant or denial of a motion to dismiss is the same as our review of a motion for summary judgment—is the pleader entitled to judgment as a matter of law?" *Estate of Billings v. Deadwood Congregation of Jehovah Witnesses*, 506 N.W.2d 138, 140 (S.D. 1993) (citing *Jensen Ranch, Inc. v. Marsden*, 440 N.W.2d 762, 764 (S.D.1989)). Jurisdictional issues may be raised at any time. *Devitt v. Hayes*, 1996 SD 71, ¶ 6, 551 N.W.2d 298, 300 (citing *Deno v. Oveson*, 307 N.W.2d 862, 863 (S.D.1981)). This Court reviews challenges to court jurisdiction de novo. *Id.* (citing *State v. Vandermay*, 478 N.W.2d 289, 290 (S.D.1991); *State v. Spotted Horse*, 462 N.W.2d 463, 465 (S.D.1990)).

---

1. All parties to this litigation approach this dispute from the proposition that the State of South Dakota has no jurisdiction over land held in trust by the United States of America. The State of South Dakota has filed an amicus brief arguing that all trust land is not automatically outside state jurisdiction merely because of its trust status. As the argument advanced by the amicus was not raised nor briefed by the parties and we have no adequate record to address it, we will proceed to adjudicate this appeal without venturing into the point raised by the State and leave it for another time with an adequate record with full briefing.

2. 18 USC 1151 defines Indian Country as

(a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.

## DECISION

[¶ 11.] There are certain legal principals that guide our resolution of this issue. South Dakota's Constitution art XXII declares that "said Indian lands shall remain under the absolute jurisdiction and control of the Congress of the United States." *See Smith v. Temple*, 82 S.D. 650, 152 N.W.2d 547 (1967). This Court has consistently held that it is "inappropriate for states to assert jurisdiction over 'reservation affairs' if it would interfere with tribal sovereignty and self-government and impair the authority of tribal courts." *Gesinger v. Gesinger*, 531 N.W.2d 17, 20 (S.D.1995) (citing *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 15–16, 107 S.Ct. 971, 976, 94 L.Ed.2d 10, 19–20 (1987)); *see also In re Guardianship of Flyinghorse*, 456 N.W.2d 567, 568 (S.D.1990); *Wells v. Wells*, 451 N.W.2d 402, 405 (S.D.1990). In determining issues of jurisdiction, " 'the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them.' " *Sage v. Sicangu Oyate Ho, Inc.*, 473 N.W.2d 480, 481 (S.D.1991) (quoting *Williams v. Lee*, 358 U.S. 217, 220, 79 S.Ct. 269, 271, 3 L.Ed.2d 251, 254 (1959)). Finally, preemption forms another barrier to assumption of jurisdiction over reservation Indians. *Id.*, at 481–482 (citing *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143, 100 S.Ct. 2578, 2583, 65 L.Ed.2d 665, 672 (1980)).

[¶ 12.] Risses' complaint alleges a violation of SDCL 40–28–4, which provides as follows:

Except as in this chapter otherwise provided, any person owning or having in his charge or possession any horses, mules, cattle, goats, sheep, or swine, which such animals shall trespass upon the land, either fenced or unfenced, owned by or in possession of any person, or being cropped by any person injured by such trespass, shall be liable to any such person injured for all damages sustained by reason of such trespassing.

This statute has been interpreted to provide for strict liability for damage done by livestock for trespass and injury to another's property. *Till v. Bennett*, 281 N.W.2d 276,

278 (S.D.1979); *Hall v. Umiker*, 87 S.D. 362, 364–65, 209 N.W.2d 361, 362–363 (1973).

[¶ 13.] As a general proposition, punitive damages are not recoverable in tort actions unless expressly allowed by statute. SDCL 21–1–4. Nonetheless, SDCL 21–3–2 provides:

In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, or in any case of wrongful injury to animals, being subjects of property, committed intentionally or by willful and wanton misconduct, in disregard of humanity, the jury, in addition to the actual damage, may give damages for the sake of example, and by way of punishing the defendant.

This Court has specifically found this statute applies to causes of action brought pursuant to SDCL 40–28–4. In *Till*, this Court determined a neighboring landowner was entitled to exemplary damages in an action against a cattle owner for damage caused by trespassing cattle, where the evidence indicated a wanton and reckless disregard of the neighbor's rights by the cattle owner. 281 N.W.2d at 279.

[¶ 14.] In this case, there is no dispute as to whether the circuit court has proper jurisdiction to decide the underlying claim for trespass under SDCL 40–28–4 and the issue of compensatory damages. The question is do the courts of this state have jurisdiction over the claim for punitive damages?

[¶ 15.] Count One of the complaint alleges:

That on or about August 12, 1994, 124 head of cattle owned by the Defendants and specifically in the charge and control of Defendant James Meeks did enter *onto the lands of the plaintiffs and cause damage thereon.* (emphasis added).

Clearly this is a cause of action pursuant to SDCL ch 40–28 based on damage to Risse's land that is undisputedly not Indian Country [3] and is under the jurisdiction of the State of South Dakota. However, Count Two of

---

3. *Supra* note 2.

Risse's complaint seeking punitive damages, alleges:

> that the Defendants conduct in not fencing *their leased land* was intentional and willful with wanton and reckless disregard for the rights of the Plaintiffs. (emphasis added).

[¶ 16.] The Meeks' cattle were kept on land owned by the United States of America in trust for the Oglala Sioux Tribe. Under the Oglala Sioux Tribal Law and Order Code Book, ch 35, § 17, "Grazing Permit Contracts Code," all permanent improvements such as fences become the property of the landowner, in this case the United States in trust for the Tribe.[4] South Dakota law is currently in accord that absent an agreement to the contrary, fences become a fixture and part of the realty. *See Curran v. Curran*, 67 S.D. 119, 289 N.W. 418 (1939) (interpreting SDCL 43-33-2).

[¶ 17.] In *Till* this Court recognized that punitive damages were recoverable by a landowner who suffered damages when a neighbor's cattle trespassed on the landowner's land. In doing so, we noted that it was based on "tortious acts which involve circumstances or ingredients, of malice ... or a wanton and reckless disregard of the rights of the plaintiff." *Id.*, 281 N.W.2d at 279. In upholding a jury verdict for the plaintiff, we did so based on the defendants intentional failure to keep the fence-line closed to cattle trespass. Obviously the malice, or wanton and reckless disregard occurs by intentional improper maintenance of the fence or failure to install the fence at the defendants' boundary line. In the case now before us, there is not even a claim that the Meeks entered onto the Risse's land or had any legal or contractual obligation to place a fence upon Risse's land.

[¶ 18.] Thus, the complaint and applicable law on punitive damages find fault with the Meeks (if any can be factually proven) for acts or omissions committed upon the realty which they lease and which is owned by the United States of America in trust. As such, any claim of state jurisdiction is disposed of by S.D. Const. art. XXII. *See* Rickert, 188 U.S. at 440–41, 23 S.Ct. at 481–2, 47 L.Ed. at 537–38. More recently in *DeCoteau v. District County Court*, 420 U.S. 425, 428, 95 S.Ct. 1082, 1085, 43 L.Ed.2d 300, 305 (1975), the Court held in matters of civil jurisdiction that:

> It is common ground here that Indian conduct occurring on the trust allotments is beyond the State's jurisdiction, being instead the proper concern of tribal or federal authorities.

[¶ 19.] In *Peano v. Brennan*, 20 S.D. 342, 106 N.W. 409 (1906) suit was brought in state court by an Indian against an Indian agent for allegedly destroying the Indian's fence located on the Pine Ridge Indian Reservation. We held that the State had no jurisdiction to adjudicate the dispute as the cause of action arose on realty which was under the exclusive jurisdiction of the United States and state jurisdiction was precluded by art XXII of our State Constitution. *Id.See also O'Neal v. Diamond A Cattle Co.*, 63 S.D. 481, 260 N.W. 836 (1935).

[¶ 20.] This does not non-suit Risses on their claim for punitive damages. Chapter 2, Section 20 of the Oglala Sioux Code permits jurisdiction of all suits wherein the "defendant is a member of the Oglala Sioux Tribe and of all other suits between members and non-members who consent to the jurisdiction of the tribe." Punitive damages are permitted when the injury is "deliberately inflicted." Oglala Sioux Code, ch 2, § 22.2. Risses conceded to the trial court that they could have litigated this matter in tribal court and their sole justification for not doing so was

---

4. There is nothing novel to this approach. In *United States v. Rickert*, 188 U.S. 432, 23 S.Ct. 478, 47 L.Ed. 532 (1903) the Court held although South Dakota's tax laws at the time classified permanent improvements to realty owned by the United States in trust for Indians, as personal property, this state classification did not create state jurisdiction in the form of taxation over the permanent improvements made to realty. "The fact remains that the improvements here in question are essentially a part of the lands, and their use by the Indians is necessary to effectuate the policy of the United States." *Id.*, 188 U.S. at 442, 23 S.Ct. at 482, 47 L.Ed. at 538. The *Rickert* Court applied the same analysis to an attempt to tax cattle located on this trust land which was provided by the United States to the Indians. 188 U.S. at 443–4, 23 S.Ct. at 482–83, 47 L.Ed. at 538–39.

because "we ain't going there[.]" Personal dissatisfaction with using a tribal court as the jurisdiction for the resolution of a legal dispute has been rejected as a valid basis to create jurisdiction to proceed in another court system. *Iowa Mutual,* 480 U.S. at 18–19, 107 S.Ct. at 978, 94 L.Ed.2d at 21–2.

[¶ 21.] In sum, we hold that the tribal court has exclusive jurisdiction on the punitive damage claim and therefore affirm the trial court.

[¶ 22.] MILLER, C.J., and KONENKAMP, J., concur with writing.

[¶ 23.] SABERS and AMUNDSON, JJ., dissent.

KONENKAMP, Justice (concurring).

[¶ 24.] The majority opinion sets forth a congruent jurisdictional analysis. I concur separately only for the purpose of responding to the dissents. By employing legal principles isolated from Indian law, the dissents fail to articulate a legally sound resolution to a difficult jurisdictional problem. They miss two crucial points: (1) none of the cases they cite involve the crossing of sovereign boundaries; and (2) both ignore well-settled exceptions to the rule against splitting causes of actions.

[¶ 25.] Plaintiffs do not allege that the owners drove their cattle off the reservation onto plaintiff's land, only that the cattle strayed off the reservation due to lack of adequate fencing. What might be the purpose or policy for having fences on Indian land: perhaps to mark off the boundaries of the reservation; to demarcate some special interest; to prevent cattle and horses from straying; to help stockgrowers maintain the quality and health of their herds, or to control breeding by preventing inferior sires from mixing with other herds. Whatever the reasons, state courts have no jurisdiction over the construction and maintenance of fences in Indian Country. Yet imposing punitive damages for fencing decisions on the reservation allows the state to do indirectly what it could never do directly.

[¶ 26.] State power to regulate Indians and Indian lands is sharply delimited. *See generally Bryan v. Itasca County,* 426 U.S. 373,

392, 96 S.Ct. 2102, 2113, 48 L.Ed.2d 710 (1976); *Williams v. Lee,* 358 U.S. 217, 220, 79 S.Ct. 269, 271, 3 L.Ed.2d 251 (1959). On the other hand, "tribal activities conducted outside the reservation present different considerations. . . . Absent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to non-discriminatory state law otherwise applicable to all citizens of the State." *Mescalero Apache Tribe v. Jones,* 411 U.S. 145, 148–49, 93 S.Ct. 1267, 1270, 36 L.Ed.2d 114 (1973) (citation omitted). Thus if a controversy arose outside Indian Country, Indians living on reservations may be subject to state jurisdiction. *Voorhees v. Spencer,* 89 Nev. 1, 5–6, 504 P.2d 1321, 1323–24 (Nev 1973).

[¶ 27.] But the question here is more entangled. In these types of jurisdictional disputes, "[t]he proper inquiry is whether the actions of the state would infringe on the right of reservation Indians to make and be governed by their own laws." *Matter of Guardianship of D.L.L. and C.L.L.,* 291 N.W.2d 278, 281 (S.D.1980)(citing *Williams,* 358 U.S. at 217, 79 S.Ct. at 269, 3 L.Ed.2d at 251; *Utah & N. Ry. Co. v. Fisher,* 116 U.S. 28, 6 S.Ct. 246, 29 L.Ed. 542 (1885)). Even when the focus of a dispute is off the reservation, tribal courts, not state courts, are the proper forum to resolve disputes about certain Indian property interests. *Id.* (citations omitted). Under the "infringement test," we can say today what this Court said thirty years ago:

> [O]ur state courts have no jurisdiction to hear and determine a civil action for the alleged wrongful use and possession of land located in Indian Country by a tribal Indian defendant. To impose state law and state jurisdiction in this controversy would infringe upon the Pine Ridge Reservation Indians' right and power to make their own laws and be governed by them.

*Kain v. Wilson,* 83 S.D. 482, 487, 161 N.W.2d 704, 706 (S.D.1968) (citation omitted).

[¶ 28.] Consider the converse of the argument. Would tribal courts have jurisdiction to impose punitive damages upon non-residents for failure to construct or maintain

fences off the reservation? No court has ever so held. *See Halwood v. Cowboy Auto Sales, Inc.*, 124 N.M. 77, 946 P.2d 1088 (Ct.App.1997)(tribal court empowered to impose punitive damages on non-Indians for conduct on reservation); *UNC Resources, Inc. v. Benally*, 514 F.Supp. 358, 362 (D.N.M.1981)(tribal court cannot impose tribal civil standards of behavior for conduct off reservation in civil suits seeking compensatory and punitive damages). This, of course, is not to say that states may not, in various circumstances, exercise jurisdiction over claims by Indians in state courts against non-Indians, even when those claims arose in Indian Country. *See Poafpybitty v. Skelly Oil Co.*, 390 U.S. 365, 88 S.Ct. 982, 19 L.Ed.2d 1238 (1968); *Williams*, 358 U.S. at 219, 79 S.Ct. at 270, 3 L.Ed.2d 251 (dictum); *United States v. Candelaria*, 271 U.S. 432, 444, 46 S.Ct. 561, 564, 70 L.Ed. 1023 (1926); *Felix v. Patrick*, 145 U.S. 317, 332, 12 S.Ct. 862, 867, 36 L.Ed. 719 (1892); *Fellows v. Blacksmith*, 60 U.S. (19 How.) 366, 15 L.Ed. 684 (1857). *See also Smith v. Temple*, 82 S.D. 650, 152 N.W.2d 547 (S.D.1967)(resident tribal Indians have right under Art VI, § 20 of South Dakota Constitution to bring and maintain civil actions in state courts for redress of wrongs against person and property).

[¶ 29.] The rule against splitting actions is an adjunct to the doctrine of res judicata. "The doctrine of res judicata ... prevents 'splitting of a cause of action' and requires all grounds upon which a single claim is based to be asserted and concluded in one action, on pain of being barred from separate suit." Wright, Federal Courts § 78, at 297. *Accord Baertsch v. County of Lewis and Clark*, 223 Mont. 206, 209, 727 P.2d 504, 506 (Mont 1986)(rule against splitting causes of action and doctrine of merger inextricably related to principle of res judicata). At the heart of res judicata is the effort "to preclude parties from contesting matters that they have had a full and fair opportunity to litigate." *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979).

[¶ 30.] The dissenters' indiscriminate reliance on the rule against splitting causes of action ignores two exceptions clearly applicable to this case. First, the Restatement Second of Judgments § 26(1)(c) (1982) holds the general rule inapplicable when:

> The plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief....

*See, e.g., United States v. Pan–American Petroleum Co.*, 55 F.2d 753, 782 (9th Cir. 1932), *cert. denied*, 287 U.S. 612, 53 S.Ct. 14, 77 L.Ed. 532 (1932). *See also Cream Top Creamery v. Dean Milk Co. Inc.*, 383 F.2d 358, 363 (6th Cir.1967); *Lyons v. Westinghouse Elec. Corp.*, 222 F.2d 184 (2d Cir.1955), *reh'g denied*, 222 F.2d 195 (2d.Cir.1955), *cert. denied Walsh v. Lyons*, 350 U.S. 825, 76 S.Ct. 52, 100 L.Ed. 737 (1955). Furthermore, the rule does not apply if:

> The judgment in the first action was plainly inconsistent with the fair and equitable implementation of a statutory or constitutional scheme, or it is the sense of the scheme that the plaintiff should be permitted to split his claim....

Restatement Second of Judgments § 26(1)(d) (1982). Unmistakably, the constitutional and statutory "scheme" here is the preservation of tribal sovereignty.

[¶ 31.] Secondly, but more importantly, the rule against splitting actions is inapplicable when the court itself splits an action by dismissing a claim without attributing fault to the litigant. *Wildfong v. Fireman's Fund Ins. Co.*, 181 Mich.App. 110, 448 N.W.2d 722 (Mich.App.1989). Only when a litigant splits a cause of action will the doctrine apply. *Aquatherm Indus., Inc. v. Florida Power & Light Co.*, 84 F.3d 1388, 1395 (11th Cir.1996), *aff'd*, 145 F.3d 1258 (11th Cir.1998), *reh'g. en banc denied*, 162 F.3d 100 (11th Cir.1998).

[¶ 32.] In dealing with complex jurisdictional questions it is incumbent upon us to state our rationale clearly for the benefit of future disputes. We must also respond at times to

problematical legal argument, lest it confuse the juridical underpinnings for our decisions. Thus, although I fully concur with the majority opinion, I add my analysis to explain why I consider the dissents to be in error.

[¶ 33.] MILLER, C.J., joins this special writing and I am authorized to so state.

SABERS, Justice (dissenting).

[¶ 34.] The dispositive principle of law in this case is the majority rule that an action for trespass to real property *must* be brought where the real property is situated. Because a claim for punitive damages is not a separate or independent cause of action, the dependent, ancillary punitive damage claim *must* also be tried where the real property is situated. Therefore, the trial court erred and we should reverse and remand.

[¶ 35.] "Trespass to realty, being a local action must be brought in the county where the land lies[.]" 87 CJS *Trespass* § 64, at 1012 (1954); *see also* 75 AmJur2d *Trespass* § 204, at 156 (1991):

> Actions to recover damages for trespasses to the person or to personal property are transitory in character and may be brought against the offender wherever he may be found. However, actions to recover damages for injuries to real property are local, and not transitory, and therefore they *must* be brought in the forum where the land is situated.

(Emphasis added). A "local action" is

> [o]ne wherein all principal facts on which it is founded are of a local nature; as where possession of land is to be recovered, or damages for an actual trespass, or for waste affecting land, because in such case the cause of action relates to some particular locality, which usually also constitutes the venue of the action.

*Black's Law Dictionary* 938 (6th ed.1990).

[¶ 36.] In *French v. Clinchfield Coal Co.*, 407 F.Supp. 13, 15–16 (D.Del.1976), the court discussed the difference between local and transitory actions and explained the rationale for requiring local actions to be brought where the real property is situated:

> The rule exists for salutary reasons. It prevents courts unfamiliar with local prop-

erty rights and laws from interfering with the title to real property. Moreover, since such actions often involve the testimony of local witnesses concerning the cause of action and the historical usages of the property, the restricted venue makes it more likely that the action will be tried in a convenient forum with full disclosure of all relevant facts, and notice to all interested parties.

> This Court will not engage in an exhaustive survey of all the cases dealing with the "local" "transitory" problem. It is sufficient to point out that generally those cases which have been found to be local involved either title to property; injunctive relief to stop the injury to property; or an action for trespass ... or waste.

(Collecting cases at nn. 6–8); *see also Huntington v. Attrill*, 146 U.S. 657, 669, 13 S.Ct. 224, 228, 36 L.Ed. 1123, 1128 (1892) ("Crimes are in their nature local, and the jurisdiction of crimes is local. And so as to the rights of real property, the subject being fixed and immovable.").

[¶ 37.] Perhaps this is such a basic principle of the common law of trespass that this court has never before felt compelled to state it. However, in cases where we analyzed whether we had jurisdiction in actions for trespass to real property in Indian country, we based our decision on where the land was situated, giving no regard for where the *defendant* resided. *See, e.g., O'Neal v. Diamond A Cattle Co.*, 63 S.D. 481, 484, 260 N.W. 836, 838 (1935) (finding no subject matter jurisdiction in action for trespass to Indian country and stating, "Certainly the case presents a controversy with reference to the right of possession of Indian lands in the Indian country."); *Peano v. Brennan*, 20 S.D. 342, 349, 106 N.W. 409, 412 (1906) (declining to assume subject matter jurisdiction over reservation land and noting that trespass to land outside the reservation would be under state court jurisdiction).

[¶ 38.] It makes no sense whatsoever for the majority opinion to require the punitive damage claim to be tried in tribal court when the trespass claim *must* be tried where the trespass occurred. Obviously, the tribal

court has no jurisdiction over the trespass claim. The majority opinion cites no authority for the creation of such a multiplicity of suits. Therefore, I would hold that the punitive damage claim must be tried in the same court in the same county where the land is situated because it is not a "cause of action"—it is merely a dependent, ancillary claim to the trespass cause of action.

[¶ 39.] The majority opinion violates three principles of law: First, the principle of the "majority rule," as stated above; second, the principle of law against multiplicity of actions; and, third, the spirit of the principle of law against splitting causes of action because here they are mandating a split, not of causes of action, but of one cause of action and one dependent, ancillary claim, which does not even qualify as a cause of action. *See Sodak Distributing Company v. Wayne,* 77 S.D. 496, 499, 93 N.W.2d 791, 793 (1958) (stating that "[i]t is likewise conceded that the rule in this state does not permit a single cause of action to be split or divided among several suits.") (citations omitted). *See generally Wintersteen v. Benning,* 513 N.W.2d 920, 922 (S.D.1994) (Sabers, J., dissenting) (stating "[i]t is generally recognized that the rule against splitting a cause of action is primarily for the benefit of the defendant. . . ."); *Bowen v. American Family Ins. Group,* 504 N.W.2d 604, 605 (S.D.1993) (stating "we have long recognized that a subrogated interest may not be split from an insured's cause of action against a tortfeasor."); Joseph E. Edwards, Annotation, *Waiver of, by Failing to Promptly Raise, Objection to Splitting Cause of Action,* 40 A.L.R.3d 108, 111 (1971) (stating that "[t]he rule precluding splitting of a cause of action is founded upon the principle that no person should be unnecessarily harassed with a multiplicity of suits.").

[¶ 40.] Notwithstanding the above, if the claimant here is successful on his trespass and punitive damage claims, he may have to go to tribal court to levy and execute on any judgment in excess of the bond.

[¶ 41.] The trial court erred as a matter of law in rejecting jurisdiction on the punitive damage claim and we should reverse and remand.

AMUNDSON, Justice (dissenting).

[¶ 42.] I respectfully dissent.

[¶ 43.] This Court has consistently held that it is "inappropriate for states to assert jurisdiction over 'reservation affairs' if it would interfere with tribal sovereignty and self-government and impair the authority of tribal courts." *Gesinger v. Gesinger,* 531 N.W.2d 17, 20 (S.D.1995) (citing *Iowa Mut. Ins. Co. v. LaPlante,* 480 U.S. 9, 16, 107 S.Ct. 971, 976, 94 L.Ed.2d 10 (1987)); *see also In re Guardianship of Flyinghorse,* 456 N.W.2d 567, 568 (S.D.1990); *Wells v. Wells,* 451 N.W.2d 402, 405 (S.D.1990). In determining issues of jurisdiction, " 'the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them.' " *Sage v. Sicangu Oyate Ho, Inc.,* 473 N.W.2d 480, 481 (S.D.1991) (quoting *Williams v. Lee,* 358 U.S. 217, 220, 79 S.Ct. 269, 271, 3 L.Ed.2d 251, 254 (1959)). Furthermore, preemption forms another barrier to assumption of jurisdiction over reservation Indians. *Id.* (citing *White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 143, 100 S.Ct. 2578, 2583, 65 L.Ed.2d 665, 672 (1980)).

[¶ 44.] In this case, there is no dispute as to whether the circuit court has proper jurisdiction to decide the underlying claim for trespass under SDCL 40–28–3 and the issue of compensatory damages. The question is: Would the assertion by the state court of jurisdiction over the claim for punitive damages infringe "on the right of reservation Indians to make their own laws and be ruled by them"? *In re Guardianship of Sasse,* 363 N.W.2d 209, 211 (S.D.1985) (citing *Williams,* 358 U.S. at 220, 79 S.Ct. at 271, 3 L.Ed.2d at 254). In considering this test, certain criteria are helpful to guide our analysis. "These are the following: (1) whether the parties are Indians or non-Indians, (2) whether the cause of action arose within the Indian reservation, and (3) what is the nature of the interest to be protected." *Id.* (citations omitted).

[¶ 45.] As we have noted, the parties are composed of both Indian and non-Indians. However, the cattle allegedly trespassed on land that was not part of "Indian Country" and damaged property belonging to non-In-

dian persons. Clearly, the cause of action arose off the reservation and the parties do not dispute this point. Furthermore, the nature of the interest to be protected is the right of non-Indians to hold their property secure from damage by trespassing animals on non-Indian land. This record contains no evidence that a sovereign interest of the tribe would otherwise be infringed upon if the circuit court was allowed jurisdiction over all the issues in this case. In short, an examination of these criteria leads to the conclusion that allowing state court jurisdiction over this case would not "interfere with tribal sovereignty and self-government [nor] impair the authority of tribal courts." *Gesinger*, 531 N.W.2d at 20 (citation omitted). There is no attempt to confer jurisdiction in this case over the tribe, jurisdiction is only sought over members who have readily admitted state court has jurisdiction for trespass.

[¶ 46.] Nevertheless, Meeks seek a ruling from this Court which would bifurcate this single cause of action into two parts—one requiring presentation of evidence relating to the claim for compensatory damages to be presented in circuit court and another requiring evidence relating to the punitive damage portion of the claim to be presented in tribal court. Meeks provide no authority for such an odd procedure and I find no authority to justify it.

[¶ 47.] To hold that the state court is without jurisdiction to decide the punitive damages issue would be to treat the claim for punitive damages as a separate cause of action. However, it is indisputable that "[a] claim for punitive damages must be based on some underlying cause of action, since, as a general rule, there is no separate and distinct cause of action for exemplary damages." 22 AmJur2d *Damages* § 741 (1995). Punitive damages merely constitute an element of recovery on the underlying cause of action. *Id.*

Thus, Risses' claim for punitive damages is not an independent or additional cause of action which can be separated and stand on its own. *See Schaffer v. Edward D. Jones & Co.*, 521 N.W.2d 921, 928 (S.D.1994) (holding "that punitive damages are not allowed absent an award for compensatory damages."); *Speck v. Anderson*, 349 N.W.2d 49, 51 (S.D. 1984); *Johnson v. Kirkwood, Inc.*, 306 N.W.2d 640, 643 (S.D.1981).

[¶ 48.] Risses' claim for punitive damages merely asserts an entitlement to an additional element of damages, which requires proof of malice or a wanton and reckless disregard for the claimant's rights by the defendant. To find that punitive damages are warranted, the jury will first have to find that a trespass occurred under SDCL 40-28-4. Then, the jury will have to consider whether punitive damages are warranted by considering Meeks' conduct *as it relates to the alleged trespass of their cattle.* This conduct may have occurred on the reservation or off the reservation, or the conduct may actually be an omission or lack of conduct. Malice may be presumed. SDCL 21-3-2. "However, actions to recover damages for injuries to real property are local, and not transitory, and therefore they must be brought in the forum where the land is situated." 75 AmJur2d *Trespass* § 204 (1991). Evidence that Meeks allowed their cattle to trespass and that Meeks did so maliciously are the real issues in this case, not whether Meeks were residing on the reservation at the time they allegedly acted with malice. Thus, if the underlying claim for trespassing is properly before the circuit court, the claim for punitive damages is properly addressed by that same court. This would not, in any significant way, infringe "on the right of reservation Indians to make their own laws and be ruled by them."[5] *Sage*, 473 N.W.2d at 481 (cita-

5. SDCL 21-1-4.1 provides that even before discovery on the issue of punitive damages, there must be a hearing in which the trial court, based upon "clear and convincing evidence," finds a reasonable basis to believe that there has been conduct sufficient to warrant punitive damages. Here, we do not have the benefit of knowing what evidence, if any, there is on the issue. We will assume that the issue involves conduct occurring on the reservation. Nevertheless, the Supreme Court of the United States has held that

tribal sovereign immunity does not apply to individual members of the tribe over whom the state court has obtained personal jurisdiction for conduct occurring on the reservation. *Puyallup Tribe, Inc. v. Washington Game Dept.*, 433 U.S. 165, 175, 97 S.Ct. 2616, 2622, 53 L.Ed.2d 667, 675 (1977) (rejecting the claim that the state could not exercise jurisdiction over on- reservation fishing). This does not mean that state law will be imposed upon the tribal members in this

tion omitted); *cf. Strate v. A–1 Contractors*, 520 U.S. 438, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997) (state court had jurisdiction over tort action involving non-Indians even though events occurred on tribal land where tribal court's jurisdiction was not necessary to protect tribal self-government).

[¶ 49.] The Oglala Sioux Tribe has filed a brief as amicus curiae, contending that the Tribe and federal government have enacted extensive laws and regulations to govern the conduct of grazing and range management on trust land which effectively preempts state court jurisdiction in this case. We disagree. "[A] tribe's inherent power does not reach 'beyond what is necessary to protect tribal self-government or to control internal relations.'" *Strate*, 520 U.S. at 459, 117 S.Ct. at 1416, 137 L.Ed.2d at 679 (quoting *Montana v. United States*, 450 U.S. 544, 564, 101 S.Ct. 1245, 1257–58, 67 L.Ed.2d 493, 509–10 (1981)) (alterations omitted). While Tribe speaks of its "affected land," the real

issue arose on non-tribal land when the cattle allegedly crossed onto Risses' property. The statutes and regulations that Tribe cites are inapplicable, because they deal with livestock and grazing issues on tribal land, not with the trespass of animals onto non-tribal property. The trespass of animals onto non-tribal land and the claim for damages is not a "reservation affair" and, thus, is not outside the jurisdiction of our state courts. *Gesinger*, 531 N.W.2d at 20 (citing *Cropmate Co. v. Indian Resources Intern. Inc.*, 840 F.Supp. 744, 747 (D.Mont.1993)).[6]

[¶ 50.] I would reverse and remand.

---

case with respect to the claim for punitive damages. The conduct that may warrant punitive damages, if any, will have to be evaluated based upon the rules or laws of the place where the conduct occurs, namely tribal land.

**6.** The majority relies on *DeCoteau v. District County Court*, 420 U.S. 425, 428, 95 S.Ct. 1082, 1085, 43 L.Ed.2d 300, 305 (1975), for the proposition that "Indian conduct occurring on the trust allotments is beyond the State's jurisdic-

tion[.]" However, the same case affirmed a state court ruling finding state court jurisdiction "because 'the non-Indian patented land, upon which a portion of the acts or omissions giving rise to the [order of the court] occurred, is not within Indian Country.'" 420 U.S. at 429, 95 S.Ct. at 1085, 43 L.Ed.2d at 305. In this case, not just a portion of the acts giving rise to Risses' claim for damages arose on non-Indian land, but *the major portion* arose there.